# DECISIONS

OF THE

# SUPREME JUDICIAL COURT

OF

# MASSACHUSETTS

---

AMERICAN CASTING COMPANY *vs.* COMMONWEALTH & others.

Suffolk. November 5, 1930. — January 5, 1931.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & FIELD, JJ.

*Bond*, Public work.

St. 1922, c. 416, amending G. L. c. 30, § 39, relating to security for claims for labor and materials on public works, by interpolating the words "or employed" after the words "materials used," had as its purpose a broadening of the words "materials used" so as to include materials which were not incorporated as a part of the finished work but which were necessary to the prosecution of the work and when "used" were consumed or made so worthless as to lose their identity.

Claims against a surety on a bond, given by a construction company under G. L. c. 30, § 39, as amended by St. 1922, c. 416, in connection with a contract with the Commonwealth for constructing and reconstructing a section of a State highway, could be maintained for coal furnished to and used and consumed by the construction company to furnish heat for steam boilers to furnish power to operate steam road rollers and stone crushing machinery in the public work; for gasoline, motor oil and grease furnished to and wholly consumed by the construction company to furnish power to operate motors for excavating machinery, road rollers, trucks and compressors for drills and pumps in such work; and for leading wire used to transmit electric current from a blasting machine to dynamite caps in order to explode charges of dynamite used in blasting rock for such work and found to have been totally consumed in the work, losing its identity and "becoming a part of the completed road."

Recovery could not be had upon such a bond upon claims for tools, hardware and other supplies which were sold to the construction company and were used or employed by it in such construction work "but did not become physically incorporated, either temporarily or permanently, in the construction or repair contemplated by said contract," or for brooms, sledge handles, pick handles, roller bin gates, plows, stone forks, cylinder head gaskets, rod bearings, washers, flanges, bearing caps, lanterns, dolly with center pin, plow points, hose coupling, valve and strainer, crow bars, stone hammers, picks, drill steels, shovels, balls of masons' line, torches, parts for pump, pieces of shaft, bolts, piston rings, axes, claw hammers, mattocks and rip saws furnished to and used by the construction company, as to which it appeared that the shovels were worn out by use in shovelling dirt, gravel and stone on the job and that after use they had no value whatever although they still retained a physical identity as junk; that the steel drills were used in drilling holes in rock for blasting to clear the rock from the roadway and that all drills were worn by this work until they became junk metal of no value although they retained their identity as such, and that the other items were used on the job and were worn out, stolen or abandoned.

BILL IN EQUITY, filed in the Superior Court on September 19, 1928, to enforce claims upon a bond given under G. L. c. 30, § 39, as amended by St. 1922, c. 416.

Several claimants were permitted to intervene and the suit then was heard by a master. Material findings by the master are stated in the opinion. By order of *Cox*, J., an interlocutory decree was entered confirming the master's report, and, after hearing by *Weed*, J., the final decree described in the opinion was entered. The defendant insurance company appealed.

*A. T. Smith*, (*R. H. Peacock* with him,) for The New Jersey Fidelity and Plate Glass Insurance Company.

*C. J. Kalinauskas*, for Hedge and Mattheis Company.

*W. A. O'Hearn*, for The Pure Oil Company and another.

PIERCE, J. This is a suit by the American Casting Company and forty-eight intervening petitioners, creditors of the defendant Schnare Construction Corporation (herein called the Construction Company), against that corporation, the Commonwealth of Massachusetts, and The New Jersey Fidelity and Plate Glass Insurance Company (herein called the Insurance Company) to enforce claims for labor performed and furnished and for materials used and employed under G. L. c. 30, § 39, as amended by

St. 1922, c. 416. The case is here on the appeal of the insurance company from the final decree entered in the Superior Court on May 16, 1930.

The suit arises out of a written contract of the Construction Company with this Commonwealth dated May 17, 1927, for constructing and reconstructing a section of State highway in the town of Florida and the city of North Adams. The Insurance Company admits that on May 17, 1927, the Construction Company, as principal, and the Insurance Company, as surety, in pursuance of the contract above referred to and of the statutes of the Commonwealth, executed and delivered to the Commonwealth a bond, copy of which is set out in the record, conditional upon the payment by them for labor performed or furnished and for materials used or employed in the construction or repair of said public work; that the Construction Company has been adjudicated a bankrupt; that the Commonwealth retains no reserve under the terms of said contract out of which the duly established claims of the petitioners might be ordered paid; and that the Insurance Company alone is liable for all claims so established. The Insurance Company further admits, and the master to whom the cause was referred finds, that all the petitioners filed sworn statements of claim seasonably with the proper officers or agents, and that it is liable for all claims in the amounts herein found by the master to be due that are within the meaning of the words of G. L. c. 30, § 39, as amended by St. 1922, c. 416, " for labor performed or furnished and for materials used or employed in such construction or repair." The only question raised by the Insurance Company is: " Do the claims of the intervening petitioners herein contested come within the meaning of the statute? "

The Superior Court, upon the pleadings and the master's report, by consent ordered dismissed the original petition and the intervening petitions excepting twelve. It allowed the following claims which alone are now in controversy: the claim of Ensign & Smith Coal Company, $263.99, for coal furnished to and used and consumed by

the Construction Company to furnish heat for steam boilers, to furnish power to operate steam road rollers and stone crushing machinery in the construction or repair of said highway; the claim of The Pure Oil Company, $2,608.74, for gasoline, motor oil and grease furnished to and wholly consumed by the Construction Company to furnish power to operate motors for excavating machinery, road rollers, trucks and compressors for drills and pumps in the construction or repair of said highway; the claim of Burlingame Darbys Company, $290.01, for tools, hardware and other supplies which were sold to the Construction Company and were used or employed by it in construction work in and upon said highway, " but did not become physically incorporated, either temporarily or permanently, in the construction or repair contemplated by said contract "; and the claim of Hedge and Mattheis, $408.19, for brooms, sledge handles, pick handles, roller bin gates, plows, stone forks, cylinder head gaskets, rod bearings, washers, flanges, bearing caps, lanterns, dolly with center pin, plow points, hose coupling, valve and strainer, crow bars, stone hammers, picks, drill steels, shovels, balls of masons' line, torches, leading wire, parts for pump, pieces of shaft, bolts, piston rings, axes, claw hammers, mattocks and rip saws furnished to and used by the Construction Company.

As respects the above list of items furnished and used by the Construction Company, the master found that the shovels were worn out by use in shovelling dirt, gravel and stone on the job, and that after use they had no value whatever although they still retained a physical identity as junk; that the steel drills were used in drilling holes in rock for blasting to clear the rock from said roadway and that all drills were worn by this work until they became junk metal of no value, although they retained their identity as such; that the leading wire was used to transmit electric current from a blasting machine to the dynamite caps in order to explode the charges of dynamite used in blasting rock from said road bed, and that it was totally consumed in this work, losing its identity and

" becoming a part of the completed road "; and that the other items were used on the job and were worn out, stolen or abandoned.

As respects these contested claims the insurance company contends and the petitioners admit that prior to the amendment of G. L. c. 30, § 39, by St. 1922, c. 416, no one of the items described in the several claims, with the possible exception of the item of leading wire, which the master found became a part of the completed road, was within § 39 because such items did not enter into and become a permanent part of the completed structure. *Boston Furnace Co.* v. *Dimock,* 158 Mass. 552. *Kennedy* v. *Commonwealth,* 182 Mass. 480. *Friedman* v. *County of Hampden,* 204 Mass. 494. *Thomas* v. *Commonwealth,* 215 Mass. 369. Under R. L. c. 6, § 77 (now G. L. c. 30, § 39), the court decided more specifically in *George H. Sampson Co.* v. *Commonwealth,* 202 Mass. 326, 338, that a claim for coal, burned in engines which were used on the work to furnish power, was properly disallowed because there is a plain distinction between materials so used and materials that enter directly into the work and become a part of it, citing with approval *Philadelphia* v. *Malone,* 214 Penn. St. 90, and *United States* v. *City Trust, Safe Deposit & Surety Co.* 23 App. D. C. 153, and quoting from the former of these cases that part of the decision which reads: " To hold with the plaintiff in this case is to require us to extend the bond to cover practically everything purchased by every subcontractor on the work. If coal can be recovered for, then, of course, oil, waste, repairs, or tools used in running the derrick and locomotive or about the cars, or repairing them, would have to be recovered for, and, going a step further, light furnished if the work was prosecuted at night. If coal for an engine can be recovered for, why not feed for horses, a farrier's bill or the bill of a veterinarian? " It was stated in *Thomas* v. *Commonwealth,* 215 Mass. 369, at page 370: " It is clear . . . that the items for boards used for concrete forms and for conduits, for netting, cotton line, rules, road scraper, buggies used in transporting

help, use of scales, freight money paid, and for coal for the steam roller, were all properly disallowed." It was held in *Bay State Dredging & Contracting Co.* v. *W. H. Ellis & Son Co.* 235 Mass. 263, 266, 267, that a claim for staging and falls which were reasonably used by a subcontractor in the necessary work of painting and plastering upon the pier and which remained upon the premises after the completion of the work and were damaged, rendered unfit for use, and lost, was disallowed rightly because they were not incorporated in the building and because the mere use of an appliance, however necessary or useful it may be to the prosecution of a contract for the construction or repair of public buildings or other public works, is not labor performed or furnished or material used in such construction or repair within the reasonable intendment of R. L. c. 6, § 77, now G. L. c. 30, § 39. It was further held in *George H. Sampson Co.* v. *Commonwealth,* 202 Mass. 326, 336, that "The use of tools and machines which wear out in the use does not give a right to a lien for their value as materials."

St. 1922, c. 416, amending G. L. c. 30, § 39, by interpolating the words "or employed" after the words "materials used," had as its purpose a broadening of the words "materials used" so as to include materials which were not incorporated as a part of the finished work but which were necessary to the prosecution of the work and when "used" were consumed or made so worthless as to lose their identity. It is plain the amendment did not have for its purpose an enlargement of the words "labor performed" or "furnished" or of the word "materials" as such words are defined by the decisions of this court; and that the word "employed" was not intended to enlarge the definition of the word "materials" to include tools, hardware, and other incidental things, however described, which might be injured or used up in the construction of the work. It is equally plain that an enlargement of the word "used" was intended by the amendment; and that the statute as amended is applicable to materials that must be used in some form in the construction of the

work, which are necessarily consumed when used and are not tools, hardware, appliances, building materials, spare parts or other merchandise which does not become physically incorporated in the construction work.

It results that the final decree is affirmed as to the claims of Ensign & Smith Coal Company and of The Pure Oil Company, and is reversed as to the claims of Burlingame Darbys Company and of Hedge and Mattheis Company except as to the claim of the latter of $5.76 for leading wire which alone is allowed.

*Decree accordingly.*