WILLIAM CARTER *vs.* COMMONWEALTH & others.

Suffolk.    December 4, 1934. — March 4, 1935.

Present: RUGG, C.J., CROSBY, FIELD, DONAHUE, & LUMMUS, JJ.

*Commonwealth*, Security for public work. *Contract*, Performance and breach, Building contract.

Where a subcontract for laying a drain in a highway under construction pursuant to a contract between the Commonwealth and a general contractor provided that the subcontractor should do his work to the satisfaction of the Commonwealth's engineer and in his work should comply with the terms of the general contract, one of which required that the entire construction work should be completed to the satisfaction of the engineer, it could not be said that the obligations of the subcontractor under the subcontract had terminated at a time shortly before the entire project was completed when, although he had completed the laying of the drain, having done his work under the constant

supervision of the engineer and in a manner satisfactory to him, the general contractor had not accepted such work and the Commonwealth had not accepted it as part of the general contractor's work on the project.

In the circumstances, where such subcontractor, at the time above described, was notified by the Commonwealth's engineer that there was trouble with the drain and thereupon, without the knowledge of the general contractor and in good faith and without expectation of extra compensation, repaired a section of the drain which had settled, the repair work was done pursuant to the original subcontract even if the settling of the drain was not due to the manner in which it was laid originally and occurred without fault on the subcontractor's part; and a sworn claim for unpaid sums due him under the subcontract, filed under G. L. (Ter. Ed.) c. 30, § 39, more than sixty days after the original completion of the laying of the drain, but less than sixty days after the doing of the repair work, was seasonably filed.

Lumber, which was sold to a subcontractor performing part of the work done in constructing a highway pursuant to a contract between the Commonwealth and a general contractor and which was used several times by the subcontractor for concrete forms, "until it was entirely unfit·for further use as forms and [was] given away as scrap," was neither consumed nor made so worthless as to lose its identity as lumber, and was not "materials used or employed in" the project within the meaning of G. L. (Ter. Ed.) c. 30, § 39; and the security furnished by the general contractor pursuant to that statute was not available to the one who sold the lumber.

PETITION, filed in the Superior Court on April 7, 1933, described in the opinion.

Following the filing of sundry intervening petitions, the case was referred to a master. Material findings by him and decrees entered by order of *W. A. Burns*, J., are described in the opinion. The respondents Rooney, Cenedella and Maryland Casualty Co. appealed from each decree. The appellants' brief was addressed only to the claims of the interveners DiPietro and Quincy Lumber Company.

*J. W. Blakeney, Jr.*, for the respondents Rooney and others.

*E. J. Flavin*, for the intervener DiPietro.

*P. J. Nelligan*, for the intervener Quincy Lumber Company, submitted a brief.

CROSBY, J. This is a petition brought by the petitioner under the provisions of G. L. (Ter. Ed.) c. 30, § 39, to establish his claim for labor and materials furnished the

respondents Rooney and Cenedella, copartners doing business as John F. Rooney and Company (who will hereafter be referred to as Rooney and Company), on a State construction project, and to obtain the benefit of certain security, comprised of moneys retained by the Commonwealth under its contract with the respondent Rooney and Company and of the obligation of the respondent Maryland Casualty Company as surety upon the general contractor's bond. The case was referred to a master. It is before this court on the appeals of the respondents Rooney and Company and Maryland Casualty Company from an interlocutory decree confirming the master's report and from a final decree in favor of the intervening petitioners DiPietro and Quincy Lumber Company and others.

The master found that on February 2, 1932, a contract was executed between the respondents Rooney and Company and the Commonwealth of Massachusetts for the construction of a section of State highway. This was a public work, and a performance bond as required by G. L. (Ter. Ed.) c. 30, § 39, in the amount of $231,000 was executed by the respondent Rooney and Company as principal and the respondent Maryland Casualty Company as surety. The Commonwealth has in its hands $53,829.72 remaining due to Rooney and Company, being, with the bond, the security required by the statute. The project has been completed and was accepted by the Commonwealth on February 14, 1933, as of February 2, 1933.

The claims of numerous interveners were dealt with in the master's report in accordance with the alphabetical order of their names. As to the claim of DiPietro the master found as follows: On March 31, 1932, DiPietro entered into a contract with Rooney and Company to perform certain work required by the contract with the Commonwealth in laying drainage pipes. In pursuance of this contract he furnished labor at prices totalling $9,024.82, which were agreed to by the parties. The work provided by the contract with Rooney and Company was that he should "furnish and lay all side drains including all material and labor" and that he should "lay" certain sizes of drain

pipe and "do all trench excavation." His contract further recited that he "agrees to do the above work . . . in accordance with the Massachusetts Standard Specifications and to the satisfaction of the State Engineers" and "is to comply with all the terms and conditions of said Contract between Commonwealth of Massachusetts and" Rooney and Company. Rooney and Company's contract with the Commonwealth provided that the entire work should be completed to the satisfaction of the engineers. The last payment to DiPietro was made on February 8, 1933, leaving a balance owed to him of $1,919.12. He filed his sworn statement of claim under G. L. (Ter. Ed.) c. 30, § 39, with the proper State officer on February 7, 1933. Whether this sworn statement of claim was filed within the sixty days specified by the statute depends upon certain work done by DiPietro in the latter part of January, 1933. He finished laying the pipes and side drains sometime in September, 1932. Thereafter the only work he did was on a short pipe carrying surface water from a piece of low ground beside the road into the main longitudinal drain. This pipe "was originally laid by DiPietro under the constant supervision of the State engineer and to his satisfaction." Early in January, 1933, as the whole work was nearing completion, the assistant State engineer, who was at that time through with his work on the project and was employed in the maintenance department of the Commonwealth, noticed that the pipe was plugged up so that surface water was not running through it. He informed DiPietro that there was something wrong although he did not know the cause of the trouble; that he could not order him to go back because that was a matter to be decided by Rooney and Company; and that he was telling DiPietro because he could not see Rooney and Company. Without consulting anyone connected with Rooney and Company, and without the latter's knowledge of the trouble, DiPietro on January 27, 1933, examined the pipe and found that it had settled in the middle, and with two of his men he dug up three sections — about ten feet — placed gravel underneath to bring the line of the pipe back to the proper pitch, ce-

mented the sections together, backfilled the trench and tamped the earth down, leaving the whole in a condition satisfactory to the State engineer, the work taking about a day. The sagging of the pipe was due to the settlement, either of the gravel placed by DiPietro under the pipe in the trench which he had previously dug, or of the earth placed by Rooney and Company as the base for the new road. The master states: "It is impossible to find which was the cause." DiPietro repaired the pipe without regard to whose fault it was because it was a piece of work previously done by him under his contract with Rooney and Company, and he made no extra charge and expected no payment therefor. Whether or not in the above circumstances January 27 is the day when the claimant last furnished labor on this work under his contract, and accordingly whether his sworn statement of claim was filed within the specified sixty days, presents a question of law.

In *Peerless Unit Ventilation Co. Inc.* v. *D'Amore Construction Co.* 283 Mass. 121, 124, 125, it was said: "Work actually called for by the contract or continuing employment, performed in good faith with the intention of completing the job, though done with the ulterior purpose of saving the lien and postponed until long after the bulk of the work has been completed, will permit the filing of the statement within sixty days after the doing of the last work. . . . But . . . a gratuitous performance of work not contracted for, does not set the time running so as to preserve a lien for the earlier work." Besides, work done to correct defects or to make substitution for previous faulty performance is equally effective to renew the period for filing the claim for a lien. Such correction is as much needed to furnish a complete and proper performance of the contract as work done to finish a previously unfinished detail of the work. In either case the contract obligation is unfulfilled pending the performance of such additional work. See *Winer* v. *Rosen,* 231 Mass. 418; *McLean* v. *Wiley,* 176 Mass. 233, 234. "Work done to remedy defects may be considered in deciding whether a claim is filed in time." *Dolben* v. *Duncan Construction Co.* 276 Mass. 242, 251.

The question is, Was the work done by DiPietro necessary under his contract? The pipe involved was originally called for by the contract. If DiPietro did the work in a faulty or unworkmanlike manner, he would not thereby have completely performed the work under the contract, *Thurston* v. *Blunt*, 216 Mass. 264, 268, and work done in remedying the defect would have been work required by the contract.

The appellants contend that for two reasons all contract obligations of DiPietro had ceased when the pipe was originally laid, and hence that any work thereafter done could not have been work called for by the contract. In the first place it is found that this pipe had been laid originally "under the constant supervision of the State engineer and to his satisfaction." It thus appears that at the time the work was being done the methods employed were satisfactory to the engineer and he saw nothing to criticize in the manner in which the work was performed. It is plain that this pipe in a defective condition would not have been satisfactory on February 2, 1933, when the work as a whole was finally accepted. There was no previous acceptance of the work by Rooney and Company. Moreover, in addition to the express requirement in DiPietro's contract to perform the work in a satisfactory manner, there was a requirement that the work should measure up to the terms and conditions of the contract between Rooney and Company and the Commonwealth. It was, then, clearly within DiPietro's obligation to furnish work which would meet with the State engineer's approval when the time came to accept the work from Rooney and Company. Besides, it does not appear that at any time previous to the time the pipe was repaired DiPietro's contract obligation was considered by the parties to be at an end or fully performed so that Rooney and Company would have been precluded from requiring further performance in case DiPietro were in fact at fault in respect to the defective work. The contract between the parties was not treated by them as completed. See *Monaghan* v. *Putney*, 161 Mass. 338, 339. Nor could it have been the intention of the parties on a reasonable construction of the contract

to treat it as fulfilled until Rooney and Company's work had been approved and accepted, at least so far as DiPietro's contribution to it was involved. There had been no acceptance of this portion of the work by the Commonwealth prior to the repair work. See *Pacific Sewer Pipe Co.* v. *United States Fidelity & Guaranty Co.* 185 Cal. 515.

The appellants' second ground of contention that DiPietro's contractual obligation was at an end is that there is no proof that DiPietro was at fault for the defective condition of the work. If Rooney and Company could not prove that DiPietro was at fault for the defect it could not prove the obligation to remedy it. Yet the fact might remain that DiPietro had been to blame for the faulty work. It appears that he was willing to accept responsibility for the defect because it occurred in a portion of the work done under his contract, and he made the repairs and remedied the defect. In view of the possibility that he was responsible, it cannot rightfully be held that he was bound to wait until the defect was actually brought home to him before the repair could be held to have been made under the contract. We are of opinion that the work in the circumstances here shown could be found to have been done under his contract if it was "reasonably necessary in order to make a good job and was done in good faith." *Dolben* v. *Duncan Construction Co.* 276 Mass. 242, 252. In that case there was no proof that the particular work done by the Richmond Fireproof Door Company was a specific obligation under its contract, yet it was held that the work, done in good faith by the claimant "to make a good job," could have been found reasonably necessary to complete the original contract obligation of the claimant and that the work was effective in preserving the lien. In the case at bar it could have been found that DiPietro by his contract assumed the risk of defects in the soil or in previous work and so his work could be reasonably found to be required to complete his obligation under the contract, regardless of his own fault as to causing the defect. It is plain that he agreed to provide Rooney and Company with work which would be acceptable. See

*Pusey* v. *Pennsylvania Paper Mills*, 173 Fed. Rep. 634, 643. The pipe was clearly required by the contract. If DiPietro was not at fault, the extra work might not have been an absolute obligation under his contract, but in this sense a gratuitous performance on his part. However, it could have been found that at the time the last work was done it was not performed as a gratuity for the purpose of continuing the lien, but was done by DiPietro to remedy an existing defective condition so that there could be no doubt that he had fulfilled his contract. It is plain that the work was "furnished in fulfilment of the contract and in good faith." *Shaughnessy* v. *Isenberg*, 213 Mass. 159, 161. If it appears that the work was not directly obligatory, it should not be allowed to defeat the effect of performance in good faith rendered in an effort to make perfect the work called for by the contract. Although there was no express finding of good faith on the part of DiPietro, such clearly appears from the circumstances and the inferences to be drawn from the master's findings of fact. *Fairbanks* v. *McDonald*, 219 Mass. 291, 297. The findings of the master fully justify the action of the trial judge so far as this claim is concerned.

As to the claim of the Quincy Lumber Company, the facts found by the master show that this company furnished lumber to another intervener, the Albany Bridge Construction Company, Inc., at agreed prices totalling $581.11, the last of such material being delivered on July 12, 1932, and that such amount is still due. On July 25, 1932, within the sixty days specified by the statute, the Quincy Lumber Company duly filed its sworn statement of claim under the statute with the proper State officer. The lumber so furnished was "used and reused several times by the Albany Company for forms for the concrete installed by it on this project, until it was entirely unfit for further use as forms and [was] given away as scrap." The only question before this court in connection with this claim is whether the Quincy Lumber Company is entitled to share in the security provided by the bond and the moneys retained under the contract by the Commonwealth. This depends upon the ques-

tion whether the lumber furnished by this petitioner and used and reused for forms until entirely unfit for use for that purpose was "materials used or employed in such construction" under G. L. (Ter. Ed.) c. 30, § 39. This statute governs the case at bar. The meaning of the present statute is expressly stated in *American Casting Co.* v. *Commonwealth*, 274 Mass. 1, at page 6. It is plain that the lumber used for concrete forms in the present case was not shown to have been either "consumed or made so worthless as to lose" its identity. The finding that it was "given away as scrap" is not the equivalent of a finding that it actually had been rendered so worthless as to lose its identity. It remained wood, and could still be used for fuel, and it does not appear that it might not still have been used as lumber for some purposes, even though not for concrete forms. In *American Casting Co.* v. *Commonwealth*, 274 Mass. 1, it was held that the amendment (St. 1922, c. 416) did not enlarge the meaning of the word "materials," but enlarged only the meaning of the word "used" so as now to include materials that must be used in some form in the construction of the work, "which are necessarily consumed when used and are not tools, hardware, appliances, building materials . . . or other merchandise which does not become physically incorporated in the construction work." It was held in that case not to cover tools and appliances which were worn out even though reduced to junk value. The same construction of the statute was reached in the case of *Walsh Holyoke Steam Boiler Works, Inc.* v. *McCue*, 289 Mass. 291.

The interlocutory decree entered April 18, 1934, as of April 14, 1934, is affirmed. The final decree entered April 18, 1934, as of April 14, 1934, is modified by striking out the provision for payment to Quincy Lumber Company and by dismissing the petition of Quincy Lumber Company without prejudice to proceedings by it against Albany Bridge Construction Company, Inc., and as modified is affirmed.

*Ordered accordingly.*