WILLIAM J. BARRY *vs.* JAMES H. DUFFIN, trustee in bankruptcy, & others.

Suffolk. December 13, 14, 1934. — April 10, 1935.

Present: RUGG, C.J., CROSBY, FIELD, & LUMMUS, JJ.

*Commonwealth*, Security for public work. *Contract*, Construction, Performance and breach, Building contract. *Agency*, Ratification. *Corporation*, Officers and agents. *Assignment*. *Partnership*, What constitutes. *Equity Pleading and Practice*, Master: recommittal.

Where a subcontract made with a general contractor constructing a highway required the subcontractor to excavate and dispose of loam, the provision for "disposal" being that all suitable material excavated should be used in the construction of certain parts of the highway "and at such other places as directed"; and, while the work was going on, the parties to the subcontract interpreted the word "disposal" to mean only "the initial removing and stacking of loam available for future removal to its final resting place," and the general contractor was content to accept the loam where it was stacked and directed the subcontractor to stack it there, it was *held*, that the subcontractor had performed the subcontract according to its terms and was not liable to the general contractor for the expense of rehandling and spreading the loam.

Whether or not one, who executed and filed in behalf of a corporation a sworn statement of claim pursuant to G. L. (Ter. Ed.) c. 30, § 39, had authority to do so at the time, his act was ratified by the corporation when it filed an intervening petition in equity under the statute to enforce its claim.

Where a subcontractor who performed part of the work of constructing a public work for the Commonwealth had assigned his claim therefor, it was proper for him to file a sworn statement of claim and to bring proceedings in equity to enforce it, pursuant to G. L. (Ter. Ed.) c. 30, § 39, in his own name.

One, who furnished to the general contractor and a subcontractor engaged in the construction of a public work for the Commonwealth gasoline which was consumed in the operation of machinery and of trucks used in the construction, was entitled to the benefit of the security furnished by the general contractor under G. L. (Ter. Ed.) c. 30, § 39.

Where it was provided in an agreement between a contractor and another person that, in consideration of certain services to be rendered by the latter to the contractor, they should share the profits from a contract between the contractor and the Commonwealth for the con-

struction of a public work, and a certain part of the construction work should be awarded on subcontract to the other person, which subcontract subsequently was duly made, he did not become a partner of or a joint adventurer with the contractor, and was not barred on that ground from obtaining, as subcontractor, the benefit of the security furnished by the contractor under G. L. (Ter. Ed.) c. 30, § 39.

One who made a subcontract to construct part of a public work built for the Commonwealth was not barred from obtaining, as subcontractor, the benefit of the security furnished by the general contractor under G. L. (Ter. Ed.) c. 30, § 39, even if, after the subcontract was made, he failed to perform certain services for the general contractor in consideration of which the latter, previous to the making of the subcontract, had promised sundry things to him, including the awarding to him of the subcontract; the subcontract was independent of the earlier agreement, and, furthermore, the earlier agreement was unilateral, so that such failure by the subcontractor to perform the services merely excused the general contractor from performing such promises on his part as were still executory.

Where a subcontract by an individual to construct part of a public work built for the Commonwealth was assigned by him to a corporation which he formed and controlled, there being nothing to prevent such assignment, and the corporation thereafter completed performance of the subcontract, a statement of claim under G. L. (Ter. Ed.) c. 30, § 39, both for work done by the individual and for work done by the corporation, which was in the name of the corporation and was signed by the individual as its president and sworn to by him, was sufficient.

The mere fact, that the amount specified in a sworn statement of claim filed pursuant to G. L. (Ter. Ed.) c. 30, § 39, was substantially larger than the amount later found to be due the claimant in equity proceedings under the statute, was not fatal to the claim.

The disposition of a motion to recommit to a master in a suit in equity for the finding of an additional fact which, the moving party contended, would disclose error in a finding made by the master, was within the discretion of the judge who heard it.

BILL IN EQUITY, filed in the Superior Court on November 25, 1932, and afterwards amended, described in the opinion, originally against John F. Kennedy and others.

After the filing of sundry intervening petitions, the case was referred to a master. Material findings by him are stated in the opinion. By order of *Gray, J.*, there were entered interlocutory decrees denying a motion by the defendant Kennedy to recommit to the master and confirming the master's report "except as to his conclusions of law"; and an interlocutory and a final decree dealing with the several claims. The defendants Kennedy and Maryland Casualty Company appealed. Subsequently

the defendant Kennedy was adjudicated a bankrupt and his trustee in bankruptcy was substituted for him.

*C. J. Redmond,* for the defendant trustee in bankruptcy.

*J. W. Blakeney, Jr.,* for the defendant Maryland Casualty Company.

*S. H. Holmes,* Assistant Attorney General, for the Commonwealth.

*R. W. Frost,* for Charles I. Hosmer, Inc., intervener.

*J. B. Rintels,* for Neponset Oil Company, intervener.

*W. R. Morris,* for Bowen Contracting Company, intervener, submitted a brief.

LUMMUS, J.  In November, 1931, the original defendant Kennedy became the general contractor for the building of a road in Boston for the Commonwealth.  The plaintiff Barry, a dealer furnishing crushed stone and stone dust to Kennedy for the job, brought this bill under G. L. (Ter. Ed.) c. 30, § 39, to obtain the benefit of security in the form of a bond upon which the defendant Maryland Casualty Company is surety and of money retained by the Commonwealth.  Various subcontractors, and persons furnishing material to the contractor or a subcontractor, intervened for the purpose of sharing in the security.

The case was referred to a master under the form of reference set forth in Rule 86 of the Superior Court (1932). The claims of the plaintiff Barry and of many of the interveners are not now in controversy.  The appeals of Kennedy's trustee in bankruptcy and of Maryland Casualty Company present for our consideration the allowance of the claims of the interveners Bowen Contracting Company, Fisher Hill Company and Charles I. Hosmer, Inc., in addition to the disallowance of the claim of Kennedy to a larger award against the Commonwealth than was made.

1. *The claim of Bowen Contracting Company.*  This company performed work in excavation as a subcontractor under Kennedy.  The master found a balance due it of $2,532.21.  The defendants seek to wipe out that balance by a charge in favor of Kennedy for the rehandling and spreading of excavated loam.  Its contract required it to perform "Loam Excavation, including disposal" in "accord-

ance with Section 3 of the Standard Specifications for state highway work." Those specifications called for the "removal and satisfactory disposal" of all excavated material, and under the heading "Disposal of Material" provided: "All suitable materials removed from the excavation shall be used as far as practicable in the formation of the embankments, sub-grade, shoulders, etc., and at such other places as directed." The master finds that the parties, while the work was being done and "until after the proceedings in this case were commenced interpreted the term 'disposal' as meaning only the initial removing and stacking of loam available for future removal to its final resting place." That finding must stand, since no evidence is reported from which a different finding might be made. If Kennedy was content to accept the loam where it was stacked, and directed the claimant to stack it there, as might be found, the contract was satisfied according to its terms. The conclusion that Bowen Contracting Company owes nothing to Kennedy cannot be pronounced wrong.

The claim of Bowen Contracting Company is attacked also on what are thought to be technical grounds. It is not now argued that its contract was invalid because executed before its articles of organization were filed. See *Colpitts* v. *L. C. Fisher Co.* 289 Mass. 232, 233, and cases cited. It is contended, however, that an assignment of its claim to Oliver G. Kelley on September 6, 1932, deprived Bowen Contracting Company of the right to preserve its claim by a statement signed and sworn to by its attorney on September 14, 1932, and then duly filed. As a corporation, it could act only by an agent or attorney. Whether the attorney had authority at the time is unimportant, for the subsequent intervening petition for the enforcement of the claim impliedly ratified his act. *Batchelder* v. *Hutchinson*, 161 Mass. 462, 467.

There is nothing in the objection that the statement was filed, and the petition brought, by and in the name of Bowen Contracting Company, the assignor. The statute (G. L. [Ter. Ed.] c. 30, § 39), in providing that "the claimant" shall file a statement and subsequently a peti-

tion, does not prohibit assignments. In *Dolben* v. *Duncan Construction Co.* 276 Mass. 242, 252, an assignor of a similar claim under the similar statute relative to public works undertaken by municipalities (G. L. [Ter. Ed.] c. 149, § 29), filed the statement of claim without mentioning the assignment. This was held proper. The court said, "An assignee may by statute sue in his own name but he may also sue in the name of the assignor. G. L. c. 231, § 5." In *Williams* v. *Weinbaum*, 178 Mass. 238, the assignor of a claim secured by a statutory mechanic's lien upon real estate preserved the lien effectively by filing a sworn statement alleging a debt due to himself and bringing a petition in his own name for the benefit of the assignee. See also *Moore* v. *Dugan*, 179 Mass. 153, 158; *Wiley* v. *Connelly*, 179 Mass. 360; *American Carpet Lining Co.* v. *Chipman*, 146 Mass. 385. It is of no concern to the debtor whether proceedings are brought in the name of the assignor, or, where permitted, in the name of the assignee (*Mayhew* v. *Pentecost*, 129 Mass. 332, 338; *Lewis* v. *Club Realty Co.* 264 Mass. 588; *Universal Adjustment Corp.* v. *Midland Bank, Ltd., of London,* 281 Mass. 303, 311; *Arwshan* v. *Meshaka,* 288 Mass. 31), so long as the debtor is in no danger of double liability. *Rogers* v. *Murch,* 253 Mass. 467, 470, 471.

2. *The claim of Fisher Hill Company, Inc.* This company furnished to the intervener Bowen Contracting Company, and to the contractor Kennedy, gasoline which was consumed in the operation of machinery employed in doing the work of construction. In addition, it furnished to the contractor Kennedy other gasoline which was "used on this project," being supplied to trucks. It cannot be assumed or found upon the master's report that the trucks were not used in the work of construction. The claim was properly allowed. *American Casting Co.* v. *Commonwealth,* 274 Mass. 1.

3. *The claim of Charles I. Hosmer, Inc.* This claim is more complicated. Charles I. Hosmer and one Terrell M. Ragan were officers of Boston-Continental National Bank. On October 29, 1931, an agreement under seal was entered into between them and Kennedy, whereby "In consideration

of Charles I. Hosmer and/or Terrell M. Ragan being instrumental in obtaining financial backing for John F. Kennedy in connection with a bid of Morton and Canterbury Streets, Boston, running to the Commonwealth of Massachusetts; and in further consideration of one dollar each to the other paid and duly received, it is hereby understood and agreed: 1. That all bridge work called for under the said contract is to be awarded to Charles I. Hosmer at the Coleman bid price so-called. 2. That all work other than the drainage shall, at the direction of Charles I. Hosmer, be let to subcontractors so chosen and approved by him. 3. That all checks received from the Commonwealth shall be sent to a nominee of Hosmer and Ragan and the disbursements therefrom countersigned by either of them or their nominee. 4. That in consideration of the foregoing the net profits arising out of this contract shall be divided: fifty percent to John F. Kennedy, twenty-five percent each to Ragan and Hosmer." On the same day, as appears by a letter offered by the defendants, Ragan as president of the bank assured Maryland Casualty Company that the bank would lend Kennedy as much as $50,000 to insure the completion of the work. The master finds that the words, "being instrumental in obtaining financial backing for" Kennedy, meant that Hosmer and Ragan were to use their official positions in the bank to induce the bank to lend money to Kennedy up to the amount of $50,000. In December, 1931, the bank closed, and Kennedy received only a small part of the credit intended. Shortly afterwards Ragan died.

On November 19, 1931, in partial performance of the agreement of October 29, 1931, Kennedy sublet to Charles I. Hosmer the bridge work called for by Kennedy's contract with the Commonwealth. The price for the work to be done by Hosmer was the so called "Coleman bid price," and this required Kennedy to pay Hosmer about $17,000 more for the bridge work than Kennedy received for it. On April 27, 1932, without the knowledge of Kennedy, Hosmer assigned all his right, title and interest in and to his contract with Kennedy to a corporation formed and controlled by Hosmer, called Charles I. Hosmer, Inc., which agreed

with him to perform the contract, then only partly performed. The master finds in substance that all the work done by Hosmer as an individual has been paid for except to the amount of $212.09, but the work done by the corporation, amounting to $28,010.88, remains unpaid. The corporation makes claim for both, a total of $28,222.97, and its claim has been allowed.

The defendants argue that Hosmer and Ragan were partners or joint adventurers with Kennedy in his contract with the Commonwealth, and that neither Hosmer nor his assignee can claim rights as a subcontractor. The only evidence of partnership or joint enterprise is the contract of October 29, 1931. Evidently that contract contemplated no partnership or joint enterprise. Hosmer and Ragan merely exacted a promise to share profits as the price of their financial assistance. *Rosenblum* v. *Springfield Produce Brokerage Co.* 243 Mass. 111. *Mitchell* v. *Gruener*, 251 Mass. 113, 123. *Beatty* v. *Ammidon*, 260 Mass. 566. *Seemann* v. *Eneix*, 272 Mass. 189. Whatever may be said of the ethics or the legality of the contract of October 29, 1931, the subcontract of November 19, 1931, though contemplated by the earlier contract, stands by itself. *Bauer* v. *Bond & Goodwin Inc.* 285 Mass. 117, 119. The contract of October 29, 1931, was unilateral. Hosmer and Ragan promised nothing, but in consideration of their "being instrumental in obtaining financial backing" Kennedy promised several things. The master refuses to find any breach of that contract on the part of Hosmer. Even if Hosmer failed to obtain the financial backing contemplated, the result would be only that Kennedy would be excused from executory promises on his part. Failure after November 19, 1931, to furnish financial backing would not deprive Hosmer of his rights under the unconditional subcontract made on that day.

In view of the general finding in favor of Charles I. Hosmer, Inc., it cannot be assumed or found that the subcontract with Hosmer involved such a reliance upon his personal skill and care that it could not be assigned. *New England Cabinet Works* v. *Morris*, 226 Mass. 246,

251. See also *Lunn & Sweet Co.* v. *Wolfman*, 256 Mass. 436, 441, 442; *Lefebvre* v. *Pembroke, ante,* 8. There is nothing to show that any provision of the contract forbade assignment, as in *Old Colony Crushed Stone Co.* v. *Cronin*, 276 Mass. 221, 226, and *Federal National Bank of Boston* v. *Commonwealth*, 282 Mass. 442, 450. The statement filed under the statute in the name of Charles I. Hosmer, Inc., the assignee of the Hosmer contract, signed by "Charles I. Hosmer, Pres.," and sworn to by Charles I. Hosmer, was sufficient. That it claimed several thousand dollars more than was found to be due, is not fatal, as it would have been under early forms of the mechanics' lien law, which required "a just and true account." *Hubbard* v. *Brown*, 8 Allen, 590.

4. *The claim of Kennedy against the Commonwealth.* In adjusting the rights of the parties, the amount owed to Kennedy by the Commonwealth was determined. In the computation, the master and the judge allowed him $77,491.44 for "borrow" at forty-five cents a cubic yard. By "borrow" is meant earth brought from outside the highway location and used for embankments. Kennedy's trustee in bankruptcy contends that the cubic yards should have been counted by multiplying the number of truck loads by the capacity of the truck, and not measured by the cross-section method. The master found that the latter method was not only more accurate but was required by the contract. No error appears. This claimant appealed from the denial of his motion to recommit the master's report for the finding of an additional fact which, his trustee in bankruptcy contends, would show a mathematical error in the number of cubic yards found by the master. Recommittal for such a purpose is discretionary with the judge. *Pearson* v. *Mulloney*, 289 Mass. 508, 513.

What has been said covers the objections to the master's report, as well as the matters argued with respect to the propriety of the final decree based upon it.

> *Interlocutory decrees affirmed.*
> *Final decree affirmed, with costs to the*
> *Commonwealth and the interveners.*