MARIO PANDOLF COMPANY, INC. *vs.* COMMONWEALTH & others.

Suffolk.   April 4, 1939. — May 25, 1939.

Present: FIELD, C.J., DONAHUE, DOLAN, COX, & RONAN, JJ.

*Commonwealth*, Security for public work. *Contract*, Construction, Building contract.

The filing by a subcontractor on a public work, before he had fully performed his contract, of a sworn statement for the entire sum that would become due for full performance, did not satisfy the requirements of § 39 of G. L. (Ter. Ed.) c. 30, in the amended form appearing in § 1 of St. 1935, c. 472, although the amount for completing performance after such filing was small; and the subcontractor was not entitled to the benefit of the security for any part of his claim.

An order for field paint, given by a contractor for the public work of building a bridge to a subcontractor whose contract called only for the furnishing of structural steel "shop" painted, was separate from such subcontract; and, where the subcontractor filed the sworn statement required by § 39 of G. L. (Ter. Ed.) c. 30, in the amended form appearing in St. 1935, c. 472, § 1, more than sixty days after completion of his subcontract but within sixty days after fulfilling the order for field paint, his claim against the security furnished by the contractor was allowed only for the amount of the later order.

PETITION under § 39 of G. L. (Ter. Ed.) c. 30 in the amended form appearing in § 1 of St. 1935, c. 472, by a subcontractor upon a public work, filed in the Superior Court on March 2, 1938.

Eleven claimants intervened. From a final decree as to the claims entered by order of *T. J. Hammond*, J., the Maryland Casualty Company and Joseph T. Ryerson & Son, Inc., appealed.

The first paragraph of the decree adjudged that the security taken pursuant to said § 39 was represented both by a sum retained by the Commonwealth and deposited with the clerk of court and by the bond on which the Maryland Casualty Company was surety. The fifth paragraph of the decree ordered the claim of Toscano established

against the security in the sum of $828.74, of which $441.10 was ordered paid from the sum retained and $387.64 by the Maryland Casualty Company. The sixth paragraph of the decree established the claim of Joseph T. Ryerson & Son, Inc. against the contractor in the sum of $2,674.83 and interest and directed that only $179.88 thereof be established against the security, $89.11 to be paid from the retained fund and $90.77 by Maryland Casualty Company.

*H. Cohn*, for the intervener Joseph T. Ryerson & Son, Inc.

*H. B. White*, for the respondent Maryland Casualty Company.

*W. S. Whiteman*, for the intervener Toscano.

Cox, J. The Rendle Contracting Company, a respondent, hereinafter called the Rendle Company, made a contract with the Commonwealth for the construction of a bridge and a portion of a highway in the town of Bolton, and the Maryland Casualty Company, a respondent, hereinafter referred to as the surety company, executed a bond, as surety, to secure payment by the Rendle Company for labor performed or furnished, and for materials used or employed in the construction. This petition was brought under G. L. (Ter. Ed.) c. 30, § 39, as amended by St. 1935, c. 472, § 1, to obtain the benefit of the security, and several claimants intervened. All claims have been disposed of except those of Sabatino Toscano and Joseph T. Ryerson & Son, Inc., hereinafter referred to as the Ryerson Company. The case was referred to a master whose report was confirmed by interlocutory decree. The final decree established Toscano's claim in full against the security; it established the Ryerson Company's claim but only in part against the security. The surety company and the Ryerson Company appealed. The evidence is not reported.

1. The only question raised by the appeal of the surety company is whether the statement of Toscano's claim was filed in accordance with § 39, as amended, which provides that each "claimant shall file . . . a sworn statement of his claim, within sixty days after the claimant ceases to perform labor or furnish labor, materials, appliances and equip-

ment . . . ." The master found that Toscano's contract with the Rendle Company required him to furnish certain guard rails and posts for the bridge, "complete in place," and that the words "complete in place" meant that the guard rails and posts were to be painted; and the parties agreed that this is so. Toscano furnished and installed the rails and posts, and on March 8, 1938, the State engineers advised him that he had furnished and installed a specified number of feet of rail, "all that was necessary," and six posts. At that time the rails and posts had not been painted by Toscano, as required by his contract. On March 9, 1938, Toscano filed a sworn statement of his claim, which embraced the items and the amounts that the parties agreed were furnished, and he intended that the amount set forth in the claim should include any charge for painting. The painting, which was a part of Toscano's contract, was not completed until on or about March 25, 1938. Toscano admitted that it was a part of his contract to do the painting and that the amount of his claim, $771, was the price for "everything complete." There is a specific finding that on March 8, 1938, Toscano had furnished the items set forth in his claim but had not completed the painting, as was required not only by the general contract but also by his own contract with the Rendle Company. There is a further finding that the Rendle Company owed Toscano $771 with interest from "sometime in the immediate vicinity of April 1, 1938."

The trial judge established the debt of the Rendle Company owed to Toscano in accordance with the findings of the master, and found and ruled that a lien for the total amount of the debt including principal and interest "is established against" the surety company.

Unless Toscano's claim was filed in accordance with the quoted provisions of the statute he can establish no claim against the security. We find nothing in the report of facts by the master that warrants such conclusion as a matter of fact, and we think that the judge was not warranted in making such finding. There is nothing to control the bald finding of fact by the master that when Toscano filed his

claim he had not completed his contract.  See *Dodge* v.
*Anna Jaques Hospital,* 301 Mass. 431, 435.

We think that it was error to rule that the claim was
filed in accordance with the provisions of the statute.  It
was pointed out in the case of *Peerless Unit Ventilation
Co. Inc.* v. *D'Amore Construction Co.* 283 Mass. 121, 124,
that the statute requiring security for payment for labor
and materials furnished for public works is an outgrowth
of the statute creating mechanics' liens upon buildings and
land of private persons, and that decisions under that law
are in point in so far as they involve the construction of
similar provisions of law in the statutes relating to liens
connected with public work.  *Cook Borden & Co. Inc.* v.
*Commonwealth,* 293 Mass. 174, 180.  The statute does
not authorize the filing of a statement except when the
work and labor have been done under such circumstances
as to create a debt which is due and payable either then
or at some future time.  The "statement required cannot
be made until everything is done that is necessary to
create the relation of debtor and creditor, and until all
labor and materials have been furnished which enter
into the debt for which the lien is claimed."  *General
Fire Extinguisher Co.* v. *Chaplin,* 183 Mass. 375, 377.
Under the facts found there can be no apportionment
of the contract price giving a lien for that part repre-
sented by the work done before the filing of the state-
ment and there is no lien for that part represented by
the work done afterwards.  *Angier* v. *Bay State Distilling
Co.* 178 Mass. 163.  *General Fire Extinguisher Co.* v.
*Chaplin,* 183 Mass. 375, 378.  *Peerless Unit Ventilation
Co. Inc.* v. *D'Amore Construction Co.* 283 Mass. 121, 125.
As was pointed out in the last case cited, the decision
in the case of *Bay State Dredging & Contracting Co.* v.
*W. H. Ellis & Son Co.* 235 Mass. 263, "had no tendency
to authorize the filing of a sworn statement before the
work included in the claim is completed."  We find noth-
ing in *Barry* v. *Duffin,* 290 Mass. 398, to support the con-
tention of Toscano that there has been, or can be, any
waiver of the failure to file the claim within the specified

time. Neither can the fact that the cost involved in doing the painting is small be given any consideration in construing the statute.

The result is that so much of the final decree as is contained in the fifth paragraph is reversed and that in the decree as modified Toscano's claim against the Rendle Company is to be established in the amount found due by the master, with interest to the date of final decree; that Toscano is to have costs against the Rendle Company in the sum of $26.90, and that the bill as to Toscano against the surety company is to be dismissed with costs of this appeal.

2. We think there was no error in the final decree as to the establishment of the claim of the Ryerson Company. The master found that the Ryerson Company, in accordance with its contract of April 22, 1937, with the Rendle Company, furnished steel for the construction of the bridge. This contract called for approximate amounts of steel but at fixed prices. The structural steel furnished under the contract was to be "shop" painted. All materials called for by the contract were delivered on different dates between May 22, 1937, and September 13, 1937. Orders or instructions were given from time to time as to the exact quantities of steel required by the Rendle Company and all steel furnished was "in every way satisfactory." The last delivery was on September 13, 1937. The Ryerson Company had nothing to do with the erection or placing of the steel that it furnished. This work was done by the Rendle Company. "Steel in place" means to include two coats of field paint, "usually applied by those having the obligation to put the steel in place." Nothing was said by the parties about field paint at any time until November 10, 1937, when the Rendle Company gave an order to the Ryerson Company for fifty gallons of field paint as distinguished from shop paint, and this paint was used in the construction of the bridge. The master found as a fact that the order of November 10, 1937 (which was the paint order) was something separate and apart from the order given in April for steel; and he stated that "unless, as a

matter of law, a reasonable interpretation of . . . [the order for the steel] warrants a different conclusion, I find it was no part of the claimant's obligation when the steel was purchased from it by the general contractor to furnish field paint or apply the same." The provision in the order of April 22, 1937, that all materials were to be in accordance with plans and specifications of the Commonwealth, cannot be considered as anything more than a requirement that the steel itself that was furnished in accordance with that order should be according to plans and specifications. It cannot be regarded as requiring the Ryerson Company to do anything more than its contract provided, that is, to furnish steel of the quality and kind called for by the plans and specifications. The steel was in every way satisfactory, and the case of *Carter* v. *Commonwealth*, 290 Mass. 97, is distinguishable. We find nothing in the master's report that, after September 13, 1937, which was the date of the last delivery, there was a possibility that more steel might be needed for the construction work. Orders were given for the "exact quantities of steel required." Nowhere is there any suggestion in the report that on November 10, 1937, when the paint was ordered, there was even a possibility that more steel would be required under the order of April 22.* The facts bring the case within what was said in *Peerless Unit Ventilation Co. Inc.* v. *D'Amore Construction Co.* 283 Mass. 121. That case was a bill in equity to obtain the benefit of security under G. L. (Ter. Ed.) c. 149, § 29 (see now St. 1938, c. 361), which contains a provision that, in order to obtain the benefit of such security, "the claimant shall file in the office of the county treasurer or of the city or town clerk a sworn statement of his claim within sixty days after the claimant ceases to perform labor or furnish . . . materials. . . ." The language quoted is identical, except as to the place where the claim is to be filed, with the language hereinbefore quoted as appearing in G. L. (Ter. Ed.) c. 30, § 39, as amended by St. 1935, c. 472, § 1, and in that case

---

* The Ryerson Company's statement of claim was filed on January 4, 1938. — REPORTER.

it was said at page 125: "But work done under a new and independent arrangement, made after the original contract or continuing employment has ended, or a gratuitous performance of work not contracted for, does not set the time running so as to preserve a lien for the earlier work. *O'Driscoll* v. *Bradford*, 171 Mass. 231. The findings of the master show that the work done on November 29, 1930, either was done gratuitously and not by virtue of any contract, or was done under a new contract to make repairs not contemplated by the original contract which had been performed long before. In either case it did not enable the plaintiff, by filing a sworn statement on December 20, 1930, to revive rights which had been lost by failure to file a sworn statement within sixty days after September 3, 1930." The case at bar is distinguishable from *Miller* v. *Batchelder*, 117 Mass. 179.

The result is that only so much of the claim of the Ryerson Company as represents the cost of the paint furnished, together with interest and costs, is established against the security, and that there was no error in the final decree with respect to the establishment of the claim of the Ryerson Company.

The sixth paragraph of the final decree is to be modified by providing that the amount therein established against the security is to be paid by the clerk of courts out of the retained percentage now in his hands, as described in the first paragraph of the decree, and that the surety company is to have its costs of this appeal.

3. The final decree is also to provide for the disposition of any part of the retained percentage remaining in the hands of the clerk of courts after all other provisions of the decree have been complied with. As modified by what has been said, the final decree is affirmed.

*Ordered accordingly.*