INTERNATIONAL TELEPHONE & TELEGRAPH CORPORATION *vs.* HARTFORD ACCIDENT & INDEMNITY COMPANY & others.

Suffolk. February 3, 1970. — April 14, 1970.

Present: WILKINS, C.J., SPALDING, KIRK, SPIEGEL, & REARDON, JJ.

*Public Works. Equity Pleading and Practice,* Master: report, inferences. *Evidence,* Presumptions and burden of proof.

A master's report which required a reviewing court to cull, draw together and correlate facts scattered among many numbered paragraphs imposed an unwarranted burden on the court. [285]

A master to whom was referred a suit in equity under G. L. c. 149, § 29, by the legal successor of an unpaid supplier of materials to a sub-

contractor on a public construction project imposed upon the plaintiff a burden of proof with respect to showing compliance with § 29 greater than the law required.  [287–288]

Where it appeared that a subcontractor on a public building construction project reported to an unpaid supplier of materials that certain materials had not been included in previous shipments of materials and were not on the job site when the subcontractor required use of them, whereupon the supplier shipped such materials without charge and they were used in the building, it was held that a sworn statement of claim under G. L. c. 149, § 29, for all materials supplied, which was filed with the proper official within ninety days after the later shipment, although more than ninety days after the earlier shipments, was seasonable as to all the materials, even if the later supplied materials were replacements for some materials earlier shipped.  [288–289]

BILL IN EQUITY filed in the Superior Court on May 13, 1965.

The suit was heard by *Coddaire*, J., on a master's report.

*Francis H. Fox* for the plaintiff.

*Herman Snyder* (*David F. Parish* with him) for the defendant.

KIRK, J.  The plaintiff (I T & T), a Maryland corporation, by corporate merger succeeded to the assets, claims and choses in action of Nesbitt, Inc. (Nesbitt), a Delaware corporation, engaged in the business of supplying ventilating, heating and plumbing materials.  Under G. L. c. 149, § 29, I T & T seeks to enforce Nesbitt's right to payment for materials furnished by Nesbitt for use in the construction of an addition to a public school in the town of Holliston (the town).

The general contractor for the construction of the school addition was Donatelli Building Company, Inc. (Donatelli), a Rhode Island corporation.  The surety on Donatelli's bond to the town was the defendant Hartford Accident and Indemnity Company (Indemnity).  Kahn Heating Corporation (Kahn), a Massachusetts corporation, subcontracted with Donatelli to do the heating and ventilating work at the school.  Nesbitt supplied certain materials required by Kahn in the performance of its subcontract with Donatelli.

Kahn is not a party to the suit.  No relief is sought against the town.

We state certain undisputed facts. Kahn's first purchase order to Nesbitt was made in July, 1963. It called for materials at a purchase price of $8,280. Nesbitt accepted the order. Shipments were made on October 7, 14 and 24, 1963. The October shipments embraced more than 650 items. On March 13, 1964, additional materials which included one component invoiced for $23.60 were shipped to Kahn at the site by Nesbitt. The March 13, 1964, shipment consisted of a total of thirteen items. This shipment will be discussed in detail later in the opinion.

On April 9, 1964, Kahn was adjudicated bankrupt. On May 18, 1964, Nesbitt filed with the town clerk a sworn statement of its claim for $8,353.10 for heating and ventilating equipment supplied to Kahn for the school from October 7, 1963, to May 7, 1964.[1]

No payment whatever has been made to Nesbitt for the materials furnished at the school job.

The case was referred to a master, who, subject to some vague reservations of law, found for Indemnity and Donatelli. By interlocutory decrees the plaintiff's motion to recommit was denied, its exceptions to the report were overruled, and the report was confirmed. A final decree was entered dismissing the plaintiff's bill. From all of the decrees the plaintiff has appealed.

The master correctly stated "To obtain the benefit of a sworn statement filed within 'ninety days after the claimant ceases to . . . furnish . . . materials, appliances . . . as aforesaid' the plaintiff must rely upon the March 13, 1964 shipment," since the last previous shipment was clearly more than ninety days before the filing of the sworn statement.

The master found "Nesbitt made all shipments in good faith and with no express intention to extend the time prescribed by G. L. c. 149, § 29, for filing its lien."

He made an alternate finding, based in part on a stipula-

[1] The figure $8,353.10 is made up of the $8,280 for the October, 1963, shipments plus the $23.60 for a component of the March 13, 1964, shipment plus $49.50 for special cabinets and grilles shipped on May 7, 1964. At the hearing before the master Nesbitt withdrew its claim to the $49.50 and it plays no part in the case.

tion of the parties. "If, as a matter of law, the petitioner *can* recover, the amount of its finding is $8,280.00 plus allowable interest from May 18, 1964 when it filed the sworn statement of claim . . ." (emphasis supplied).

We feel obliged to comment on the master's report. Notwithstanding the fact that on its face the report conforms to Rule 86B of the Superior Court (1954) in that it has captions reading "Subsidiary Findings of Fact" and "General Findings of Fact" it lacks the coherence and unity which are essential to a statement of facts upon which a judgment is to be made. It has been necessary for us to cull, draw together and correlate facts scattered among eighty-five numbered paragraphs. This kind of burden should not fall upon a reviewing court, whether it be the Superior Court or this court. We have criticized this kind of report before. *State Line Contractors, Inc.* v. *Commonwealth,* 356 Mass. 306, 324. The present effort represents a new high in the flourishing art of expository confusion.

The master's finding in favor of Indemnity was based on his conclusion that the claim filed by Nesbitt on May 18, 1964, under G. L. c. 149, § 29, was ineffective. It was ineffective, says the master, because it was late; and it was late because the shipment by Nesbitt to Kahn on March 13, 1964, was a nullity under G. L. c. 149, § 29.

We have studied the report and shall state the result as to facts found, issues presented and the rationale apparently controlling the conclusions of the master.

The master's report shows that the shipment of March 13, 1964, was a single shipment. Although the report does not expressly so state, we think it is desirable for purposes of presentation and discussion to divide the shipment into three components. We must treat each of the three components separately.

1. The first component consisted of items shipped to Kahn as the result of a change order in Donatelli's original contract with the town. There is no question about the authenticity of the change order. The town's architect directed Donatelli to furnish and install a two foot section

of fin radiation in the men's lounge of the new building. At Kahn's order Nesbitt shipped these items, with necessary accessories for installation, to the site as part of the March 13, 1964, shipment. The invoice showed that the charge for this change order material was $23.60. The master stated that "he heard no direct evidence to permit [him] to find that Kahn did any work on the contract after March 13, 1964." He found that "Donatelli made its own arrangements with a Mr. Toohey to do the work covered by . . . [the change order]" and that Toohey did the work covered by the change order by using Nesbitt material reclaimed from the older building. The master concluded that because the change order materials in the March 13, 1964, shipment were not used in the school addition they did not serve to make that date effective for the commencement of the ninety day period under G. L. c. 149, § 29.

2. The second component of the March 13, 1964, shipment consisted of two so called W.O.L. wall sleeves. These items the master found had been called for by the original purchase order of July, 1963, and should have been included by Nesbitt in the October shipments of that year. By inadvertence, however, these items were not included among the more than 650 items in the October, 1963, shipments, although the charge for them was included in the October invoices. The value of the two W.O.L. wall sleeves was $6. To make up for the inadvertent omission in October 1963, Nesbitt included them at Kahn's request in the March 13, 1964, shipment. No charge was made by Nesbitt for these two W.O.L. wall sleeves. The master found that the original Kahn-Donatelli agreement called for only two Nesbitt W.O.L. sleeves in the new building. He found that the job, as completed on May 22, 1964, had two Nesbitt W.O.L. sleeves incorporated in it. He declined to find, however, that the two Nesbitt W.O.L. sleeves actually used were those shipped on March 13, 1964, "[s]ince there is a possibility that the sleeves, so seen on the job were sleeves which had been in the old school area."

3. The third component of the March 13, 1964, shipment

consisted of three seven and one half inch Type A wall sleeves and three four inch wall sleeves. These items were shipped to Kahn without charge after Kahn had reported to Nesbitt that they were not on the job site when he required their use and had not been included in the October, 1963, shipments. The master found that Nesbitt's shipment of these items without charge was "a reasonable good will gesture and in accordance with good customer dealing." He concluded, however, that the shipment of these items was "a gratuitous undertaking on Nesbitt's part," "[s]ince I have found Nesbitt had shipped to Kahn these items in 1963."

"[W]here the master in his report sets forth all of the subsidiary findings upon which he bases an ultimate conclusion, it is the duty of the trial court, and of this court, to draw its own inferences from those findings." *Corrigan* v. *O'Brien,* 353 Mass. 341, 346. *McOuatt* v. *McOuatt,* 320 Mass. 410, 411. *Samia* v. *Central Oil Co. of Worcester,* 339 Mass. 101, 122. See *LiDonni, Inc.* v. *Hart,* 355 Mass. 580, 583.

It seems to us that the master's conclusions and the method used to reach them, as shown by the words used in his report, demonstrate, at least as to components 1 and 2, that he imposed upon the plaintiff a severe and unduly rigorous standard of proof in its effort to show compliance with G. L. c. 149, § 29. He seems to have considered it his duty to deny to the plaintiff the benefit of a reasonable inference from proved facts unless the inference is a required one. For example the master said as to component 2 "I *cannot* find who actually installed these sleeves or they were, in fact, the two (2) wall sleeves shipped on March 13, 1964. Since there is a *possibility* that the sleeves, so seen on the job were sleeves which had been in the old school area and which were relocated, *I cannot infer* from the existence of Nesbitt wall sleeves at the school, that they were those furnished by Nesbitt on March 13, 1964" (emphasis supplied).

The master likewise seems to have required the plaintiff to prove that Kahn and no one else installed the materials

on the job. This is not our understanding of the law. Other factors being established it is sufficient to show that the materials were used or employed in the public building or works under the authority of the general contract. See *Nash* v. *Commonwealth*, 182 Mass. 12. And again, as to the quality of proof required on the issue, the master insisted upon "probative evidence" which, as we read the report, he equated with "direct evidence."

We think it is plain on the face of the master's report that he imposed upon the plaintiff a burden of proof that is greater than the law requires and that he applied rules of evidence which precluded consideration of material facts and thus unduly restricted his own field of deliberation as the trier of fact. For these reasons recommitment of the report would be required.

It is our further view, however, that recommitment is unnecessary because the master's conclusion on the third component of the shipment is plainly wrong and requires a different decree.

The facts found are: The items of component 3 were not on the job site when Kahn wanted to use them. Kahn reported to Nesbitt that they were not included in the October, 1963, shipments. Nesbitt shipped these items (with components 1 and 2) to Kahn on March 13, 1964, without charge. The job was completed by May 22, 1964.

With respect to component 3, unlike components 1 and 2, the master raises no doubt that the items were used in the building. Indeed the items of component 3 must have been used in the building since on March 13, 1964, they were needed to do the job, they became available on that day to do the job, and before May 22, 1964, the job was done. The master's finding that the shipment by Nesbitt was made in good faith must be taken to include the concept that the shipment was in fulfilment of the contract with Kahn and with the expectation that payment for the entire job would in due course be forthcoming. On the foregoing facts Nesbitt had done all that was needed to be done to perfect its lien under G. L. c. 149, § 29.

It remains to determine whether the master's additional bald finding that the items of component 3 had been shipped to Kahn in October, 1963, warrants a different result. We think not. The master does not find that these items, even if shipped, were delivered to or received by Kahn in 1963. It is indisputable that none of the materials was paid for. The rationale of the master appears to be: Because originally shipped and billed in 1963, although delivery is in doubt the shipment of replacement at Kahn's request in 1964 without charge is a gratuity and, as a gratuity, is outside the contract with the result that the shipment in March and use before May in 1964 are a nullity. Nesbitt's lien would thus be defeated, not by anything it failed to do in 1964, but because the master's finding three years later would supersede as matter of law Nesbitt's business judgment exercised with the elements of good will and good faith, at the time of the transaction. As the plaintiff points out, the situation before us is more favorable to it than that in *Carter* v. *Commonwealth*, 290 Mass. 97. In the *Carter* case the contractor, having completed the job, noted a defect and returned to correct it although no one had called it to his attention or alleged that he was at fault. To defeat a claim of lien based on the corrective work, the argument was made that it was voluntary and gratuitous. In rejecting the argument this court said at p. 104, "If it appears that the work was not directly obligatory, it should not be allowed to defeat the effect of performance in good faith rendered in an effort to make perfect the work called for by the contract." The possibility that the defect might have been the contractor's fault was sufficient to justify him in doing the work. The analogy need not be pressed further. The principle applies whether it is labor that has been performed or materials that have been furnished.

It follows from the facts found that Nesbitt, as matter of law, has complied with the statutory requirements of G. L. c. 149, § 29, and that the plaintiff as its legal successor is entitled to recover from Indemnity, as stipulated, the sum of $8,280 with interest from May 18, 1964. The final decree

is reversed and a new final decree is to be entered so providing. The interlocutory decrees are affirmed. The plaintiff is to have costs of appeal.

*So ordered.*