INTERNATIONAL BUSINESS MACHINES CORPORATION *vs.* QUINN BROTHERS ELECTRICAL COMPANY & others.

Suffolk.    January 6, 1947. — February 5, 1947.

·Present: FIELD, C.J., LUMMUS, RONAN, WILKINS, & SPALDING, JJ.

*Public Works. Municipal Corporations*, Security for public work. *Contract*, What constitutes, Building contract.

Subsidiary findings by a master in a suit in equity for payment of a claim for labor and materials in the furnishing by the plaintiff to a contractor of electric clocks and a timing system supported his conclusion that the parties understood that the plaintiff was obliged to furnish labor of supervision in regulating and adjusting the system after it was installed, although neither the plaintiff's written bid nor the contractor's written order accepting it made any mention of such labor.

One furnishing electric clocks and a timing system to the electrical contractor in the erection of a public building for a city was not entitled to maintain a suit in equity to enforce security obtained in accordance with G. L. (Ter. Ed.) c. 149, § 29, as appearing in St. 1938, c. 361, if the only sworn statement of his claim was filed with the city clerk before he had completed his contract by performing certain labor in regulating and adjusting the system after its installation, although the item in his contract with the electrical contractor covering such labor amounted only to $133.40 out of his entire claim of $3,335.

BILL IN EQUITY, filed in the Superior Court on June 27, 1941.

The suit was heard by *Morton*, J.

*J. G. Fay,* (*R. L. Mapplebeck* with him,) for the defendants Rugo Construction Company, Inc., and another.

*J. W. Blakeney,* for the plaintiff.

RONAN, J.  The Rugo Construction Company, Inc., hereinafter called Rugo, entered into a contract on September 12, 1938, with the city of Malden for the construction of an addition to and the making of alterations in the high school building, and Rugo as principal and the three defendant surety companies as sureties furnished a bond in accordance with G. L. (Ter. Ed.) c. 149, § 29, as appearing in St. 1938, c. 361, for the payment of labor and materials furnished to the general contractor and subcontractors in the performance of the contract.  Rugo on October 24, 1938, executed a contract with the defendant Quinn Brothers Electrical Co., hereinafter called Quinn, whereby Quinn was to furnish and install all the electrical equipment required for the said addition to and alterations in the said school building.  The plaintiff on November 7, 1938, entered into an agreement with Quinn to furnish clocks, program controls and gongs, and all necessary equipment to operate the system.  Quinn having failed to pay the plaintiff, the latter brought this bill in equity to obtain the benefit of the security furnished by said bond.  The suit was referred to a master, whose report has been confirmed.  The defendants appealed from a final decree ordering them to pay to the plaintiff $3,153.50 with interest from the filing of the bill, together with costs.

The master found that the bond was filed in accordance with G. L. (Ter. Ed.) c. 149, § 29, as appearing in St. 1938, c. 361.  The plaintiff, in order to avail itself of the benefits of this bond, was required to file a sworn statement of its claim with the city clerk of Malden within sixty days after it had ceased to perform labor or furnish materials.  The filing of such a statement is a condition precedent to the maintenance of a suit to reach the security and have it applied to the payment of the claim of one who furnished labor or materials in the construction or repair of public buildings or other public works.  *T. Shea, Inc.* v. *Springfield,* 252 Mass. 571.  *A. L. Smith Iron Works* v. *Maryland Casualty Co.* 275 Mass. 74.  *Socony-Vacuum Oil Co. Inc.* v. *Lynn,*

306 Mass. 165. *Regan* v. *Tierney*, 306 Mass. 168. *Metropolitan Pipe & Supply Co.* v. *D'Amore Construction Co.* 309 Mass. 380. The plaintiff filed such a statement on June 28, 1940. The defendants contend that it was filed before the plaintiff had fully performed its contract with Quinn. We must inquire what it agreed with Quinn to do' and when it performed what it agreed to perform.

The plaintiff was a manufacturer of electrical clocks, gongs and chimes, and equipment for the installation of electric clock and time signal systems. Its Boston representative, one Casey, learned of the work proposed to be·done in behalf of the city, studied the plans and specifications with reference to the clocks and program signals, and then prepared an estimate sheet which he sent to different bidders for this part of the electrical work. He sent a revised sheet to Quinn after it had been awarded the contract by Rugo for the electrical work. This sheet showed the various items required and the price of $3,335 for these materials. One of the items shown to be included in this price was a "supervision allowance of 4%," which represented the charge by the plaintiff for regulating and adjusting the system after it had been installed. This proposed timing system would comprise over one hundred secondary clocks and a master clock, and it would be necessary to make adjustments after they were installed in order that they would function accurately and in unison as parts of a single system. The plaintiff delivered to Quinn a letter dated November 7, 1938, offering to supply all the materials for the lump sum of $3,335, and on the same day received a written order from Quinn for the purchase of these materials for this sum. Neither the letter nor the order made any mention of any adjustment services to be performed by the plaintiff after the timing system had been installed by Quinn. Casey, however, testified before the master that, in accordance with the usual practice under the terms of its bid, the plaintiff was to provide the necessary materials and supervise the labor for so much money, and that the "supervision allowance" was a charge made by the plaintiff on account of the expense to be incurred in supervising the setting up of the

equipment. The master found that the plaintiff and Quinn understood that the plaintiff was obliged to furnish this "labor of supervision."

We agree with the plaintiff that the inclusion in the purchase price of a comparatively small charge of four per cent, amounting only to $133.40, for this supervisory labor indicates that the plaintiff did not expect that its performance would require any great amount of labor, but if it agreed, as the master found, to furnish this labor, then the performance thereof was necessary before it could file a sworn statement of its claim as provided by the statute. *General Fire Extinguisher Co.* v. *Chaplin,* 183 Mass. 375. *Mario Pandolf Co. Inc.* v. *Commonwealth,* 303 Mass. 251. The conclusion of the master that the parties intended that this supervisory work should be performed by the plaintiff is amply supported by his subsidiary findings. Indeed, this work was actually performed by the plaintiff and was not finished until July 30, 1940. Nowhere does the plaintiff contend that this work was not furnished by it or that it was not included in its contract with Quinn, but it takes the position that the plaintiff's written bid and Quinn's written order constituted the contract and that neither the bid nor the order mentioned any labor. But it is plain upon the facts reported by the master that the parties were dealing on the assumption and understanding that the bid and the order did not embody their entire contract, and his finding that the allowance for supervision was included in the price to be paid by Quinn cannot be said to be wrong. *Leavitt* v. *Fiberloid Co.* 196 Mass. 440. *Pipolo* v. *Fred T. Ley & Co. Inc.* 216 Mass. 246. *See* v. *Norris,* 234 Mass. 345, 348. *Blanchard Lumber Co.* v. *Maher,* 250 Mass. 159, 162. *Sermuks* v. *Automatic Aluminum Heel Co.* 256 Mass. 478, 484. *Montuori* v. *Bailen,* 290 Mass. 72, 74. *Kesslen Shoe Co. Inc.* v. *Philadelphia Fire & Marine Ins. Co.* 295 Mass. 123, 129. As the performance of this labor was not finished until after the sworn statement was filed, the plaintiff cannot maintain the bill against any of the defendants except Quinn, and the final decree must be modified by dismissing the bill as to them. As so modified the decree is affirmed.

*So ordered.*