ARMCO DRAINAGE & METAL PRODUCTS, INC. *vs.* TOWN OF FRAMINGHAM & others.

Middlesex.    December 7, 1954. — December 30, 1954.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Public Works.    Contract,* Building contract, Performance and breach.

In a suit in equity by a subcontractor on a town public works project to obtain the benefit of security furnished to the town by the general contractor under G. L. (Ter. Ed.) c. 149, § 29, as appearing in St. 1938, c. 361, the evidence did not show to be plainly wrong findings by the judge that the subcontractor's work of constructing a pipe tunnel was fully completed in March, and that alleged repairs to the tunnel, made by the subcontractor in late November and early December after it had been learned that the general contractor was unable to make payment, and followed by the filing early in January of the only sworn statement of claim filed by the subcontractor, were requested by the town's representative and made by the subcontractor acting in concert for the purpose of enabling the subcontractor to avail himself of the security; and a final decree denying the subcontractor recourse to the security must be affirmed.

BILL IN EQUITY, filed in the Superior Court on April 23, 1951.

The suit was heard by *O'Connell,* J.

*Albert W. Wunderly,* for the plaintiff.

*Samuel H. Cohen,* (*Herbert L. Crimlisk* with him,) for the defendant New Amsterdam Casualty Company.

RONAN, J. This is a bill in equity brought by a subcontractor to reach, in payment for labor supplied and materials furnished, the security in the form of a bond furnished by the general contractors at the time they entered into a written contract with the town of Framingham for the construction of a tunnel or outlet for the flow of water from Beaver Dam Brook and also for the repair of an existing sluiceway or tunnel draining the said brook under a nearby roadway. The New York Central Railroad Company was permitted to file an intervening petition. A final decree establishing the indebtedness of the plaintiff and the intervener against the general contractors but dismissing the bill against the town and the company which furnished the bond was entered. The plaintiff alone appealed.

The town and the general contractors entered into a written contract on December 7, 1949. The defendant casualty company furnished a bond conditioned upon the faithful performance of the work and for the payment of labor and materials supplied and furnished. The main portion of the work seems to have been the construction of a steel pipe tunnel seven feet in diameter under the main tracks of the New York Central Railroad Company. A length of pipe, which was usually ten feet, was heated when ready for placement, and strips of asphalt one foot wide and two feet long were heated and the asphalt was firmly attached to the lower fourth of the steel pipe. Additional melted asphalt was added, effecting uniformity of surface at joints and places which had become scratched. The town engineer, an engineer representing the railroad, and another representing the plaintiff inspected the tunnel on March 6, 1950. The subcontractor was directed by the town engineer to do certain things deemed necessary for the completion of the work. This work was performed. Water was diverted into the new tunnel on March 15, 1950. The

superintendent and employees of the plaintiff removed their tools and equipment on March 30, 1950. The town engineer in the monthly certificate dated April 1, 1950, allowed a credit to the general contractors for the full contract price for the installation of the new tunnel. The judge found that on March 30, 1950, the general contractors, the town, the plaintiff, and the railroad considered that the tunnel had been constructed within the terms of the main contract and that of the subcontract, that it had been fully completed, and that nothing further remained to be done.

The plaintiff had not been paid and it sent a statement to the general contractors which indicated that its subcontract was completed and was so considered by the plaintiff. Subsequently, in the early summer of 1950 it learned that the general contractors were unable to pay. It retained counsel in Boston to determine whether it had lost recourse to the bond. As the result of a letter dated September 28, 1950, from the railroad to the town engineer a conference was held at the tunnel between the latter and an engineer representing the railroad. Following this conference, the water was diverted from the new tunnel by the plaintiff and the railroad "until the repairs, so called, required by the town engineer were made." The asphalt pavement was smoothed and asphalt was applied at the joints so that the ends of the asphalt strips would be even. The total expense of the work to the plaintiff does not appear. Apart from the time spent in draining the new tunnel and stopping the flow of water into it, it took less than two days for two of the plaintiff's employees. All this so called repair work was done between November 27 and December 8, 1950. The plaintiff filed a sworn statement of its claim on January 5, 1951, and the railroad on January 11, 1951.

The judge found upon all the evidence that the purpose of making the alleged repairs was to provide an alleged right to enforce lien claims filed within sixty days of the completion of the repairs; that neither the plaintiff nor the railroad was confronted by any actual necessity for making the repairs; that the general contractors were not notified of

any alleged failure to complete the contract; and that although the monthly estimates given previously by the town engineer indicated that he had prior to the letter of the railroad dated September 28, 1950, considered that the subcontract had been fully completed he acted as the railroad requested in concert with the railroad and the plaintiff in their efforts to establish a right to file a lien claim. The judge found that the plaintiff's subcontract was completed on March 30, 1950.

The question presented is whether the ultimate finding of the judge that the plaintiff had completed its contract on March 30, 1950, was right, or whether as the plaintiff contends the contract was not fully performed until certain work had been done upon the asphalt lining at some time between November 27, 1950, and December 8, 1950.

The statute, G. L. (Ter. Ed.) c. 149, § 29, as appearing in St. 1938, c. 361, provides that in order to reach the security furnished by the contractor in contracting with a city or town for the construction or repair of public buildings or other public works "the claimant shall file in the office . . . of the city or town clerk a sworn statement of his claim within sixty days after the claimant ceases to perform labor or furnish labor, materials, appliances and equipment as aforesaid . . . ." The filing of such a statement within the prescribed period is a condition precedent in enforcing this statutory remedy. *Socony-Vacuum Oil Co. Inc.* v. *Lynn,* 306 Mass. 165, 167–168. *International Business Machines Corp.* v. *Quinn Brothers Electrical Co.* 321 Mass. 16, 19. *Philip Carey Manuf. Co.* v. *Peerless Casualty Co.* 330 Mass. 319, 322. The sworn statement is seasonably filed within sixty days of the last work done in completing the contract if this work was performed in good faith and for the purpose of completing the contract, though done with the ulterior purpose of preserving the lien and performed long after nearly all of the work covered by the contract had been performed, *Burrell* v. *Way,* 176 Mass. 164, 166, *Peerless Unit Ventilation Co. Inc.* v. *D'Amore Construction Co.* 283 Mass. 121, 124–125, *Carter* v. *Commonwealth,* 290 Mass. 97, 101;

but if the later work was furnished after the original contract was finished, or if it was no more than the gratuitous performance of work not included in the original contract or performed under a new and independent contract, then such work will not preserve the lien for the earlier work. *O'Driscoll* v. *Bradford,* 171 Mass. 231. *Mario Pandolf Co. Inc.* v. *Commonwealth,* 303 Mass. 251.

The railroad and the plaintiff were anxious to preserve their liens. Nothing happened after all parties considered the contracts as completed on March 30, 1950, until after it was discovered months afterwards that the general contractors were unable to pay their claims. There was nothing to indicate that the railroad had any just complaint concerning the condition in which the tunnel was left on March 30, 1950, and at that time the plaintiff considered the contract had been completed according to its terms. The town engineer participated with the railroad and the plaintiff in their efforts to revive their liens and to reach the security furnished by the casualty company.

The judge had the advantage of seeing and hearing the witnesses in coming to his conclusion that the contract was completed on March 30, 1950. The date of the completion of the contract was a question of fact. *Turner* v. *Wentworth,* 119 Mass. 459. *Socony-Vacuum Oil Co. Inc.* v. *Lynn,* 306 Mass. 165, 167–168. The question here is not what conclusion we might come to on the printed record alone but whether upon the record this conclusion appears to be plainly wrong. We are unable to say that it is. *Berman* v. *Coakley,* 257 Mass. 159, 166. *American Employers' Ins. Co.* v. *Webster,* 322 Mass. 161, 163. *Ross & Roberts, Inc.* v. *Simon,* 326 Mass. 12, 17. *Hosken, Inc.* v. *Hingham Management Corp.* 328 Mass. 588, 589.

It follows that the final decree must be affirmed with costs of this appeal.

*So ordered.*