46 Mass. App. Ct. 643 (1999)                    643

John W. Egan Company, Inc. *v.* Major Construction Management Corporation.

JOHN W. EGAN COMPANY, INC. *VS.* MAJOR CONSTRUCTION
MANAGEMENT CORPORATION & another.[1]

No. 97-P-1592.

Middlesex. November 4, 1998. - April 21, 1999.

Present: WARNER, C.J., KAPLAN, & BROWN, JJ.

*Surety. Bond,* Construction contract bond, Public works. *Public Works,* Payment bond, Attorney's fees. *Interest. Contract,* Public works. *Practice, Civil,* Interest, Attorney's fees.

Under G. L. c. 149, § 29, a surety on a payment bond is liable as a principal for interest on amounts due and unpaid starting not later than the sixty-fifth day after the date due. [645-650]

There was no error in a judge's determination of legal fees pursuant to G. L. c. 149, § 29, sixth par., awarded to the plaintiff in an action brought on a payment bond against a general contractor and its surety. [650]

CIVIL ACTION commenced in the Superior Court Department on September 12, 1994.

The case was heard by *Wendie I. Gershengorn,* J., on motions for summary judgment.

*Sally A. Corwin* for the plaintiff.

*Bradford R. Carver* for Firemen's Insurance Company of Newark, New Jersey.

KAPLAN, J. The Massachusetts Turnpike Authority entered into a contract with Major Construction Management Corporation (Major Construction), as general contractor, for leak repair and associated work at four ventilation shafts of the Sumner and Callahan Tunnels. Major Construction subcontracted a part of the work — painting, glazing, and lead-based coating removal — to the plaintiff John W. Egan Company, Inc. (Egan), for the contract price of $68,720. As required by the payment bond statute, G. L. c. 149, § 29, Major Construction, as principal, and Firemen's Insurance Company of Newark, New Jersey

---

[1]Firemen's Insurance Company of Newark, New Jersey.

644                        46 Mass. App. Ct. 643 (1999)

John W. Egan Company, Inc. *v.* Major Construction Management Corporation.

(Firemen's Insurance), as surety, executed a payment bond to secure the payments for labor and materials performed or furnished in carrying out the general contract.

Egan completed the work specified in the subcontract on September 30, 1993. Major Construction paid Egan $32,327 on November 22, 1993, leaving a balance of $36,393. The company was in difficulties and on December 4, 1993, sixty-five days after Egan completed the subcontract, it had failed to pay the balance due.[2]

The statute just cited, G. L. c. 149, § 29, as amended by St. 1972, c. 771, § 5, provides in the second paragraph:

> "In order to obtain the benefit of such bond for any amount claimed due and unpaid at any time, any claimant having a contractual relationship with the contractor principal furnishing the bond, who has not been paid in full for any amount claimed due for the labor, materials . . . within sixty-five days after the due date for same, shall have the right to enforce any such claim (a) by filing a petition in equity within one year after the day on which such claimant last performed the labor or furnished the labor, materials . . . included in the claim and (b) by prosecuting the claim thereafter by trial in the superior court . . . ."

Accordingly, Egan on September 12, 1994, within a year of September 30, 1993, commenced the present collection action against Major Construction and Firemen's Insurance. The troubled Major Construction defaulted in the action and Egan obtained judgment against it for the $36,393 balance with interest thereon from December 4, 1993, through the date of the judgment, taken to be November 8, 1994, amounting to $4,052.[3]

Firemen's Insurance was served with summons and complaint in the action on September 19, 1994. It did not answer on time but got its default removed and then answered, admitting liability. On December 4, 1994 (only coincidentally the an-

---

[2]Under G. L. c. 30, § 39F, Egan requested direct payment by the Turnpike Authority. The Turnpike Authority made a remittance but by mistake it was directed to Major Construction, not Egan, and in the mixup nothing reached Egan.

[3]This treated December 4, 1993, the sixty-fifth day, as the due date for payment of the balance. Under the text of § 29, the plaintiff might well have been more strict and treated the subcontract completion date, September 30, 1993, as the due date.

niversary of the date December 4, 1993), Egan received $32,980.25 from Firemen's Insurance, and on February 16, 1995, an additional $3,412.25, for a total of $36,393, the balance noted above.

The foregoing facts appeared on cross motions of the parties for summary judgment and the issue raised for decision was the amount of interest owed by the surety. Egan claimed that Firemen's Insurance, the surety, owed interest on the unpaid balance from December 4, 1993, to the respective two dates on which the surety paid the portions of the balance — thus interest on $32,980.25 from December 4, 1993, to December 4, 1994, and interest on $3,412.25 from December 4, 1993, to February 16, 1995, a total of about $4,449. (This would conform in method with the calculation of interest against the principal, Major Construction, in the default judgment against it.) Firemen's Insurance said interest should run, not from December 4, 1993, the date of default, but rather from the date it, the surety, got notice of the default, that is, the date it was served with process in the action[4] — thus interest on $32,980.25 from September 19, 1994, to December 4, 1994, and on $3,412.25 from September 19, 1994, to February 16, 1995, a total of $982.12.

A Superior Court judge allowed judgment in favor of Firemen's Insurance on the interest question and judgment for attorney's fees in favor of Egan. Egan appeals the first decision, and Firemen's Insurance appeals the second. We reverse the first, and affirm the second.

Our holding about interest rests upon the common-law precedents in the Commonwealth and the terms and purposes of the payment bond statute.

1. It has long been settled in the Commonwealth that, in the absence of a provision in the bond to the contrary, it is up to the (compensated) surety to keep itself informed of any defaults on the part of the principal; it is not the task of the creditor to inform and give notice to the surety. The court said in *Watertown Fire Ins. Co.* v. *Simmons*, 131 Mass. 85, 86 (1881):

> "[T]he creditor owes no duty of active diligence to take care of the interest of the surety. It is the business of the

---

[4]Egan apparently accepts the assertion by Firemen's Insurance that it did not know of Major Construction's failure to pay until it was served in the action.

surety to see that his principal performs the duty which he has guaranteed, and not that of the creditor. [Citing cases.] The surety is bound to inquire for himself; and cannot complain that the creditor does not notify him of the state of the accounts between him and his agent [read 'principal' in the present context], for whom the surety is liable."

To the same effect, see *Welch* v. *Walsh*, 177 Mass. 555, 557, 561-562 (1901); *Sands* v. *Melchionda*, 186 Mass. 270, 273 (1904); *Wakefield* v. *American Surety Co.*, 209 Mass. 173, 177 (1911). In *Bayer & Mingolla Constr. Co.* v. *Deschenes*, 348 Mass. 594, 602 n.7 (1965), the court referred to the Restatement of Security on the matter of notice.[5] See Stearns, Suretyship § 7.16, at 222 (Elder 5th ed. 1951).

2. The obligation of the surety under a payment bond corresponds to that of the principal. Classically and characteristically, this correspondence is signified by a provision that principal and surety are bound, jointly and severally, in a stated penal sum, conditioned on the principal's performance. See the forms of payment bond referred to in Stearns, *supra* at 537; Hunt, Construction Surety and Bonding Handbook 224 (1990); *Mestek, Inc.* v. *United Pac. Ins. Co.*, 40 Mass. App. Ct. 729, 730 (1996). The decisions have recognized this correspondence between the liabilities of the principal and surety enforceable by the creditor. The point is made in *Welch* v. *Walsh*, 177 Mass. at 559, where Justice Loring says:

"The difference between the contract of a guarantor and the contract usually entered into by a surety, is that in [the] case of a guarantor, the promise of the person secondarily liable is a collateral promise to pay, in case default is made by one who is primarily liable for the thing guaranteed, while a surety contracts directly as a principal to pay the sum of money for which he is secondarily liable."

___

[5]Section 136 of that Restatement (1941) stated: "Subject to the rules pertaining to negotiable instruments, the surety's obligation to the creditor is not affected by the creditor's failure to notify him of the principal's default unless such notification is required by the terms of the surety's contract." The question was discussed in the Tentative Draft No. 4 of Security (1940) under § 133, which appeared in the final text as § 136. That Restatement was superseded by the Restatement (Third) of Suretyship and Guaranty (1996) but we find no treatment there of this precise question of notice.

Again, in *Bassett* v. *Fidelity & Deposit Co.*, 184 Mass. 210, 214 (1903):

> "[T]he obligation of a surety on a probate bond is the obligation of the principal. The bond is a joint bond and the judgment necessarily must be the same against both. This is more than a technical rule of law, it is an instance where the true character of a surety's liability comes to the surface."

See Stearns, *supra*, § 1.1, at 1. It follows that the creditor need not go to judgment against the principal in order to ground the surety's liability toward the creditor; the creditor may sue both principal and surety in one action (as in the present case) or sue each individually.

3. The substantial correspondence of the obligations of principal and surety extends to the obligation to pay interest. The case of *George H. Sampson Co.* v. *Commonwealth*, 202 Mass. 326 (1909) (Knowlton, C.J.), arose under early statutes requiring bond for labor and materials claims in public works projects. See R. L. c. 6, § 77. The creditor was to file a sworn statement of claim with the public authority's contracting officers (note: not with the principal or surety) sixty days after the completion of the relevant work. Interest ran against the surety from the filing, without any prescribed notice to the surety. The point is expressed in the first four sentences of the following passage of the opinion; the last two sentences are addressed to a situation where the principal's liability exceeds the penal sum, which raises special questions.[6]

> "The rulings as to interest were also right. The several claimants were entitled to interest as against the contractor, the principal in the bond, from the time when the debts to them severally became due. The liability of the surety was to make good any default of the principal in regard to payments, within the amount stated as the penal sum of the bond. *Warner* v. *Thurlo*, 15 Mass. 154 [(1818)]. *Bassett* v. *Fidelity & Deposit Co.*, 184 Mass. 210 [(1903)]. This statutory liability became fixed on each claim, as

---

[6]This reading is confirmed by attention to *Bank of Brighton* v. *Smith*, 12 Allen 243 (1866), a case cited in the passage next quoted in our text. See the quotation from *Di Fruscio* v. *New Amsterdam Cas. Co.*, 353 Mass. 360 (1967), and note 8, both *infra*.

against the surety, at the time of filing the statements of the respective claims. Interest on the amount stated in the bond could rightly be charged, as it was charged, from the date of the filing of the bill [in equity]. As there was a default before that date, the defendant is liable to pay interest on this amount from the commencement of the suit. *Bank of Brighton* v. *Smith,* 12 Allen, 243 [(1866)]."

*George H. Sampson Co., supra* at 339.

4. Some sixty years later, the statutory pattern was similar, although details differed, and accountability for interest remained the same. General Laws c. 149, § 29, as then applicable, called on a claimant to file its sworn statement of claim with the Commonwealth contracting officers before the expiration of ninety days after the claimant ceased to perform labor or supply material (with suit, if necessary, to be brought within one year after the filing). In *Di Fruscio* v. *New Amsterdam Cas. Co.,* 353 Mass. 360 (1967), the defendant surety argued that interest should go against it only from the time the creditor made demand upon it (paralleling the surety's argument in the present case that it owed interest only from the time of notice to it). The court rejected that argument, and, citing and following *George H. Sampson Co.,* the court ran the interest against the surety from the filing of the statement:

> "The defendant surety company contends that interest should have been awarded, not from the date of the filing of the claim as stated to be proper in *Powers Regulator Co.* v. *Joseph Rugo, Inc.,* 348 Mass. 233 [(1964)], but only from date of demand on it. We disagree. The claimants were entitled to interest against the contractor, the principal, from the time when the account became due and '[t]he liability of the surety was to make good any default of the principal in regard to payments within the . . . penal sum of the bond.' *Sampson* v. *Commonwealth,* 202 Mass. 326, 330, 339 [(1909)]. The decree which was affirmed in the *Sampson* case allowed interest from the dates of the filing of the claims under R. L. c. 6, § 77."

353 Mass. at 363-364. See, with like result, *Philip Carey Mfg. Co.* v. *Joseph Rugo, Inc.,* 346 Mass. 206, 207 (1963); *Powers Regulator Co.* v. *Joseph Rugo, Inc.,* 348 Mass. 233, 236 (1964). In *Yanofsky* v. *Marinucci Bros. & Co.,* 351 Mass. 698 (1966),

46 Mass. App. Ct. 643 (1999)                                   649

John W. Egan Company, Inc. *v.* Major Construction Management Corporation.

a case under the then G. L. c. 149, § 29, the subcontract made particular, stated provision "for payment of interest on each invoice unpaid thirty days after its date." The court, 351 Mass. at 699, said, "No demand for interest was necessary," and, quoting from the *George H. Sampson Co.* case ("The liability of the surety was to make good any default of the principal in regard to payments, within the amount stated as the penal sum of the bond," 202 Mass. at 339), allowed interest against the surety according to the special subcontract provision about unpaid invoices.

When we come to the current version of § 29, as set forth above, the pattern is changed to eliminate the sworn statement,[7] but the surety's accountability is in the historic mode: it is liable for interest starting not later than the sixty-fifth day (see note 3, *supra*).

*In refutation.* The defendant surety says that, as § 29 does not contain an express provision regarding interest, the resort must be to the statute on prejudgment interest, G. L. c. 231, § 6C, as amended by St. 1982, c. 183, § 3, which states: "In all actions based on contractual obligations, upon a verdict, finding or order for judgment for pecuniary damages, interest shall be added by the clerk of the court to the amount of damages, at the contract rate, if established, or at the rate of twelve per cent per annum from the date of the breach or demand." The common law and the usages and interpretations of the payment bond statutes have established a particular approach to the matter of interest that would prevail over the general prejudgment-interest statute if inconsistent. In any case, there would be little difficulty in holding, in the given context, that default by the sixty-fifth day constituted a "breach" under § 6C, with consequences as to interest as mentioned in that section.

The judge below, in a marginal paragraph, said that "[w]hile I find no Mass. case directly on point," there was a "convincing weight of authority" holding that a surety's liability for interest commences with a demand upon it. There is, indeed, no pertinent Massachusetts case to such effect. Rather, the Massachusetts law is embodied in c. 149, § 29, as illuminated by

---

[7]Nolan and Sartorio say, "This is a long overdue change." Equitable Remedies § 231, at 376 (2d ed. 1993). Under § 29, third par., the filing of a statement (with the principal contractor) is required where a subsubcontractor avails itself of the statutory remedy.

earlier authority — to none of which the judge made any reference. If the longstanding Massachusetts view can be called a "minority" view, then so be it. However, the supposed weight of authority is rather delusive, as that catch phrase so often turns out to be.[8]

The conclusion we reach is consistent with the policy of our payment bond statute to assure speedy and compensatory relief for subcontractors who have done their work. See *International Heating & Air Conditioning Corp.* v. *Rich Constr. Co.*, 372 Mass. 134, 138 (1977). The judgment below regarding interest would leave the subcontractor short of full and fair compensation at the hands of the surety.

*Attorney's fees.* The plaintiff Egan succeeded in the action against the principal and also against the surety (although not then in the amount sought) and so was entitled to "reasonable legal fees" (§ 29, sixth par.). We are not disposed to question the amount allowed by the judge, which sizeably reduced the bill for time spent.

The judgment regarding legal fees is affirmed. The judgment regarding interest is reversed and the judgment for interest in accordance with this opinion shall enter in the Superior Court.

*So ordered.*

---

[8]Singularities in the backgrounds of the cases confuse judgments about "weight." Thus, of the four cases cited by the judge, one deals with interest when the liability reaches or exceeds the penal sum of the bond. *United States* v. *Hills*, 26 F. Cas. 322 (C.C.D. Mass. 1878) (No. 15,369). (For the special nature of this situation, see *United States* v. *United Drill & Tool Corp.*, 183 F.2d 998, 1000 [D.C. Cir. 1950], and *United States* v. *Hoffman Constr. Co.*, 163 F. Supp. 296, 297 [E.D. Wash. 1958], both explaining *United States* v. *United States Fid. & Guar. Co.*, 236 U.S. 512, 530-531 [1915].) A second cited case, *United States* v. *Reul*, 959 F.2d 1572 (Fed. Cir. 1992), involves a customs-entry bond, where apparently allowance of interest is in discretion. The remaining cited cases are about Miller Act bonds on Federal projects: here allowance of interest is governed by State law, and we see divergencies between the laws of Utah and Connecticut, *Golden West Constr. Co.* v. *United States*, 304 F.2d 753 (10th Cir. 1962); *United States* v. *Casle Corp.*, 895 F. Supp. 420 (D. Conn. 1995). Indeed, Miller Act cases well illustrate such differences. See Annot., Award of Prejudgment Interest Under Miller Act, 66 A.L.R. Fed. 901 (1984) (from this listing, a few States appear to take an approach like our own under c. 149, § 29).