NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-1483                                          Appeals Court

N-TEK CONSTRUCTION SERVICES, INC.  vs.  HARTFORD FIRE INSURANCE
                          COMPANY.

                        No. 14-P-1483.

      Essex.      November 5, 2015. - March 14, 2016.

            Present:  Agnes, Sullivan, & Blake, JJ.


Public Works, Payment bond.  Surety.  Notice.  Bond, Public
     works, Construction contract bond.  Contract, Public works,
     Construction contract, Bond, Surety.



     Civil action commenced in the Superior Court Department on
November 18, 2010.

     After transfer within the Superior Court Department, the
case was heard by Timothy Q. Feeley, J.


     Edward J. Quinlan for the plaintiff.
     John W. DiNicola, II, for the defendant.


     AGNES, J.  In this case we address the notice provision

contained in G. L. c. 149, § 29, as amended by St. 1972, c. 774,

§ 5 (§ 29),[1] in the context of a $23.29 million publicly funded

_____

     [1] General Laws c. 149, § 29, third par., provides in part as
follows:

project to repair a bridge in Gloucester (project).  In particular, we decide whether the electronic mail message (e-mail) notice given by the claimant, N-Tek Construction Services, Inc. (N-Tek), to the general contractor, SPS New England, Inc. (SPS), satisfied § 29.  N-Tek contends that the Superior Court judge, who tried this case without a jury, erred in concluding that the e-mail sent to SPS by N-Tek's principal failed to satisfy the requirements of § 29.  For the reasons that follow, we affirm.

SPS, the general contractor, posted a payment bond from a surety, Hartford Fire Insurance Company (Hartford).  N-Tek filed the underlying action, seeking recovery against SPS's bond

---

"Any claimant having a contractual relationship with a subcontractor performing labor or both performing labor and furnishing materials pursuant to a contract with the general contractor but no contractual relationship with the contractor principal furnishing the bond shall have the right to enforce any such claim as provided in [G. L. c. 149, § 29, second par.,] only if such claimant gives written notice to the contractor principal within sixty-five days after the day on which the claimant last performed the labor or furnished the labor, materials, equipment, appliances or transportation included in the [G. L. c. 149, § 29, first par.,] coverage, stating with substantial accuracy the amount claimed, the name of the party for whom such labor was performed or such labor, materials, equipment, appliances or transportation were furnished . . . .  The notices provided for in this paragraph . . . shall be served by mailing the same by registered or certified mail postage prepaid in an envelope addressed to the contractor principal at any place at which the contractor principal maintains an office or conducts his business, or at the contractor principal's residence, or in any manner in which civil process may be served."

pursuant to G. L. c. 149, § 29, based on its claim that it had not been fully paid for its work furnished to a subcontractor, Seaway Coatings, Inc. (Seaway). N-Tek sought to reach and apply the payment bond funds to satisfy outstanding invoices. Hartford denied liability. After a bench trial, the judge found that N-Tek did not provide sufficient written notice of its bond claim to SPS as required by § 29, and ordered judgment to enter for Hartford. On appeal, N-Tek argues that the judge misinterpreted § 29 by imposing an added requirement that the notice "include and communicate an intent to assert a claim against the [g]eneral [c]ontractor's" bond, based on Federal cases construing the Miller Act, 40 U.S.C. §§ 3131-3134 (2002), the Federal analogue to § 29.[2]

Facts. We summarize the facts found by the judge, supplemented by undisputed parts of the record.

---

[2] The Miller Act requires, in pertinent part, that laborers and material suppliers with no direct relationship with the general contractor furnishing the payment bond give "written notice to the contractor within 90 days from the date on which the person did or performed the last of the labor or furnished or supplied the last of the material for which the claim is made." 40 U.S.C. § 3133(b)(2). It was appropriate for the judge to look to Federal cases for guidance in these circumstances. See Scaccia v. State Ethics Commn., 431 Mass. 351, 355 (2000).

1.  Project.  On August 14, 2008, the Massachusetts Highway Department (department)[3] entered into a contract with SPS to perform repairs to the A. Andrew Piatt Bridge in Gloucester. Built in 1950, the four-lane deck bridge spans the Annisquam River and is a primary access way to the Cape Ann area.  In turn, SPS engaged Seaway, a Maryland-based painting subcontractor, to install a platform to be used by all trades, and to clean and paint the bridge.  Seaway and SPS executed two subcontracts, which had a total combined value of $5,765,360. At SPS's request, Seaway posted separate payment and performance bonds,[4] which were issued by its surety, First Sealord Surety, Inc. (First Sealord).[5]

---

[3] The department has since merged into a new State agency, the Department of Transportation, pursuant to St. 2009, c. 25 (the Transportation Reform Act of 2009).  See G. L. c. 6C, §§ 1 et seq.  See also Boxford v. Massachusetts Highway Dept., 458 Mass. 596, 597 n.4 (2010) (functions of Massachusetts Highway Department merged into newly created Department of Transportation).  Our use of "department" refers to both entities.

[4] Seaway's payment bond was not the "statutory bond" to which laborers or suppliers may turn if unpaid.  The statutory bond is the one given by the project's general contractor. Marinucci Bros. & Co. v. Semper Constr. Co., 343 Mass. 738, 740 (1962).

[5] SPS was within its rights to request Seaway to post the bonds.  Even though there is a lack of privity between a general contractor's surety and the project's sub-subcontractors, this circumstance does not bar a sub-subcontractor from recovering under a general contractor's payment bond.  See Peters v. Hartford Acc. & Indem. Co., 377 Mass. 863, 871 (1979).

2. <u>N-Tek's work for Seaway</u>. In 2008, Joseph P. Toffoloni formed N-Tek, a Massachusetts firm, to provide construction management consultant (or project manager) services to out-of-State subcontractors, such as Seaway, whose business operations in the Commonwealth did not support having their employees act as an on-site manager or superintendent. Toffoloni was N-Tek's president and sole employee.[6] On October 6, 2008, Toffoloni sent a proposal to Seaway (October 6 proposal), offering his services as a project manager on the project.[7] For his compensation, Toffoloni proposed, in part, a base fee of $150 per hour, "plus reasonable expenses."

N-Tek and Seaway did not enter into or otherwise bind themselves to a written contract of hire. Nor did Seaway agree, in any writing, to the terms and conditions of N-Tek's October 6 proposal.[8] Seaway engaged Toffoloni, albeit informally, to serve as a project manager, and fully paid N-Tek's first twenty-one

---

[6] We refer to Toffoloni and N-Tek interchangeably, as did the judge.

[7] The judge found that Toffoloni was "highly qualified to" manage the project, and that he had "a great deal of experience in all facets of such work, from estimating and bidding jobs to administering contracts, purchasing materials, and providing field supervision."

[8] On direct examination, Toffoloni identified the unsigned October 6 proposal as "the contract that [he] had with Seaway." He testified that his role was "to provide Seaway management assistance on this project." On cross-examination, Toffoloni agreed that Seaway had never signed the October 6 proposal.

invoices, for the period between October of 2008 and September 13, 2009. Those invoices represented $190,821 in total billings.

3. <u>Toffoloni's e-mail to SPS regarding unpaid work</u>. Seaway's painting work, scheduled to start in May of 2009, stalled for various reasons, including the fact that certain preparatory steps, such as demolition and concrete repairs, had not been completed. Seaway experienced financial difficulties, initially in the summer of 2010 and thereafter, causing it to fall behind on payments to its suppliers and others. In the run-up to Seaway's financial troubles, Toffoloni sent the following e-mail on March 16, 2010 (March 16 e-mail) to Robert A. Naftoly, SPS's vice-president of project management:

> "Hello Bob. Enclosed is the January 15, 2010 Statement to Seaway Coatings, Inc./Mr. Athanasios Koussouris for services through that date by N-Tek Construction Services, Inc. for the [project] that are still unpaid.
>
> "Please give me a call at [telephone number] when you have a chance. Thanks. Joe[.]"

An attached statement listed ten invoices, totaling $77,166.72, unpaid by Seaway.[9] As of March 16, 2010, Naftoly "had never heard of N-Tek" but he "clearly" understood that Toffoloni was

---

[9] Toffoloni identified each invoice by a date and corresponding number.

connected in some way to N-Tek.  Naftoly did not understand Toffoloni to be making a claim against SPS or Hartford.[10]

On October 20, 2010, SPS informed Seaway that it was henceforth barred from performing further work on the project, per an order of the department.  SPS hired a substitute firm, which soon abandoned the project.  Three other firms came and went before SPS engaged a fifth (and final) firm that managed to substantially complete the cleaning and painting work.

Prior proceedings.  Pretrial rulings pared down what had been a sprawling multiparty case to the present dispute between N-Tek and Hartford.  At trial, N-Tek called Toffoloni as its only witness.  Naftoly testified on behalf of Hartford.  Summarizing its case, N-Tek asserted that SPS had been put on notice by the March 16 e-mail that N-Tek had not been paid for its work performed for Seaway.  Relying on evidence of a "business relationship" between Seaway and N-Tek and the unpaid invoices, N-Tek's trial counsel argued in closing that his client was entitled, under § 29, to reach and apply the SPS bond funds to pay down the invoices in question.

On the other hand, Hartford argued that no legally valid, enforceable contract existed between Seaway and N-Tek; that N-Tek failed to provide legally sufficient written notice to SPS;

---

[10] Naftoly believed that Toffoloni was merely "looking for my help to get these invoices resolved or paid."

and that N-Tek fell well short of proving any legitimate damages recoverable under § 29.

Standard of review. In reviewing a judgment entered after a bench trial, we review the trial judge's factual findings, based on the "clearly erroneous" standard of Mass.R.Civ.P. 52(a), as amended, 423 Mass. 1402 (1996). City Rentals, LLC v. BBC Co., 79 Mass. 559, 560 (2011). If a trial judge's ultimate finding involves the interpretation of a statute, as is the case here, our review is de novo.[11] See Sutton Corp. v. Metropolitan Dist. Commn., 423 Mass. 200, 209-210 (1996).

Analysis. Section 29, which has long-standing antecedents,[12] is a remedial law intended to protect laborers and

_____

[11] When presented with a question of statutory interpretation, we look first to the applicable statutory language, which is the "principal source of insight into the legislative purpose." Registrar of Motor Vehicles v. Board of Appeal on Motor Vehicle Liab. Policies & Bonds, 382 Mass. 580, 585 (1981). "When a statute does not define its words we give them their usual and accepted meanings, as long as these meanings are consistent with the statutory purpose." Commonwealth v. Zone Book, Inc., 372 Mass. 366, 369 (1977). Procurement of public construction in this Commonwealth is governed by three distinct but related statutes: G. L. c. 149, §§ 44A-44H; G. L. c. 149A, §§ 1-11; G. L. c. 30, § 39M.

[12] An early forerunner of § 29, St. 1878, c. 209, provided in pertinent part: "it shall be the duty of the officers or agents contracting in behalf of the Commonwealth to provide sufficient security, by bond or otherwise, for payment by the contractor and all sub contractors for all labor performed or furnished, and all materials used in the construction or repair thereof." See International Heating & Air Conditioning Corp. v. Rich Constr. Co., 372 Mass. 134, 136 (1977). See also Burgess,

material suppliers from nonpayment by contractors and subcontractors involved in the construction or repair of public buildings and public works. See Otis Elevator Co. v. Long, 238 Mass. 257, 264 (1921); Peters v. Hartford Acc. & Indem. Co., 377 Mass. 863, 865 (1979); Costa v. Brait Builders Corp., 463 Mass. 65, 72 (2012) (§ 29 also "benefits" general public).

1. General principles. "Suretyship may be defined as a contractual relation whereby one person engages to be answerable for the debt or default of another." Stearns, Law of Suretyship § 1.1, at 1 (5th ed. 1951). "The fact that this [payment] bond [issued by Hartford] is required by statute does nothing to alter the settled principles of contract and suretyship law." Peerless Ins. Co. v. South Boston Storage & Warehouse, Inc., 397 Mass. 325, 327 (1986). See Wood v. Tuohy, 67 Mass. App. Ct. 335, 341 (2006); C & I Steel, LLC v. Travelers Cas. & Sur. Co. of America, 70 Mass. App. Ct. 653, 657 (2007). A statutory payment bond is a contract, although its terms and conditions are largely defined by statute, in this case, § 29. A surety's obligation under a statutory payment bond corresponds to that of its principal. John W. Egan Co. v. Major Constr. Mgmt. Corp., 46 Mass. App. Ct. 643, 646 (1999). In essence, a surety is liable to make good any default of its principal within the

---

Creditors Problems on Public Works Projects in Mass., 40 B.U. L. Rev. 239, 240 (1960).

bond's penal sum.  See George H. Sampson Co. v. Commonwealth, 202 Mass. 326, 339 (1909); Di Fruscio v. New Amsterdam Cas. Co., 353 Mass. 360, 364 (1967).

A person who has furnished labor or materials for public works and who has not been fully paid has a right under § 29 to seek recovery under the bond of the general contractor in satisfaction of amounts justly due.  Section 29 attaches three conditions to this right.  A claimant must be eligible to claim protection under § 29; give written notice to the general contractor of its claim; and commence an action in Superior Court within the time limitations established by the statute.

2.  Section 29.  a.  Eligible claimant.  The Legislature has defined those persons who are entitled to § 29's protections, including "[a]ny claimant having a contractual relationship with a subcontractor performing labor . . . pursuant to a contract with the general contractor but no contractual relationship with the contractor principal furnishing the [payment] bond . . . ."  § 29, third par.[13]  N-Tek says it fits this category.  We agree.

N-Tek had a contractual relationship, albeit implied by law, with Seaway but not with the "contractor principal" (SPS)

---

[13] The only other eligible claimants, as defined by § 29, second par., are those persons "having a contractual relationship with the contractor principal furnishing the bond," a category that plainly does not encompass N-Tek.

furnishing the bond.  The record evidence warranted a finding that Seaway and N-Tek, by their largely unambiguous conduct, had established a business arrangement, or course of dealing, to the extent that N-Tek agreed to provide managerial services for Seaway for the project and, in return, Seaway agreed to pay for N-Tek's services, described by written invoices, which were often submitted by N-Tek to Seaway on a biweekly basis.  While it is unnecessary for us to be any more precise about the nature of the relationship between N-Tek and Seaway, N-Tek's invoices are remarkable for the lack of meaningful information,[14] much less any detail, respecting the particular work for which N-Tek sought payment.

b.  Written notice.  A claimant, like N-Tek here, who has dealt exclusively with a subcontractor (Seaway) and has had no contractual relationship with the general contractor (SPS) must give written notice of its claim to the general contractor.

Specifically, pursuant to § 29, N-Tek had to give "written notice to the contractor principal [i.e., SPS] within sixty-five days after the day on which the claimant [N-Tek] last performed the labor" on the public works project, "stating with substantial accuracy the amount claimed, [and] the name of the

---

[14] Toffoloni testified that he had kept a notebook that contained detailed information for (or an itemization of) his hourly work.  He conceded that the notebook had not been offered to Hartford in the course of litigation; the notebook was apparently destroyed prior to the commencement of this action.

party [Seaway] for whom such labor was performed." N-Tek argues that the written notice need not "contain any express or explicit statements that the claimant is seeking payment from the general contractor or that a claim against its bond will be pursued." While it is true that the statutory "notice requirement can be satisfied by a brief letter" from the supplier or laborer to the general contractor, it is essential nonetheless that the notice "make unambiguous the claimed rights of all." Barboza v. Aetna Cas. & Sur. Co., 18 Mass. App. Ct. 323, 328 (1984).[15]

N-Tek's argument disregards the purpose of the notice requirement and judicial decisions interpreting § 29 and the Federal Miller Act's virtually identical language. See Bastianelli v. National Union Fire Ins. Co., 36 Mass. App. Ct. 367, 369-370 (1994). See also United States ex rel. J.A. Edwards & Co. v. Thompson Constr. Corp., 273 F.2d 873, 875-879 (2d Cir. 1959); United States ex rel. Water Works Supply Corp. v. George Hyman Constr. Co., 131 F.3d 28, 32 (1st Cir. 1997). Section 29 establishes a firm date -- i.e., sixty-fifth day from

_____

[15] The judge ruled that N-Tek's March 16 e-mail was "in writing" and "notice of something, but it was not timely notice of a claim against SPS and its surety bond." The judge assumed (and Hartford does not dispute) that a sufficiently detailed e-mail would satisfy § 29's requirement that the notice must "be served by mailing the same by registered or certified mail postage prepaid in an envelope addressed to the contractor principal" at its place of business. In view of the result we reach, we are not required to resolve this issue.

and after the date when the claimant last furnished labor -- after which the general contractor may pay a first-tier subcontractor without fear of such further liability to sub-subcontractors or suppliers who had furnished labor or material to the first-tier subcontractor.  The notice requirement bolsters the legislative policy to protect the general contractor, by requiring the claimant's writing to serve as a presentation of a claim against the general contractor.  As to this narrow point of law, "courts have consistently, and we think correctly, held that 'the written notice and accompanying oral statements must inform the general contractor, expressly or impliedly, that the supplier [or, as here, the laborer] is looking to the general contractor for payment so that it plainly appears that the nature and state of the indebtedness was brought home to the general contractor.'"  United States ex rel. Water Works Supply Corp. v. George Hyman Constr. Co., supra at 32, quoting from United States ex rel. Kinlau Sheet Metal Works, Inc. v. Great Am. Ins. Co., 537 F.2d 222, 223 (5th Cir. 1976).

Toffoloni's March 16 e-mail, when considered in light of all the material surrounding circumstances (as this court did in Bastianelli v. National Union Fire Ins. Co., supra at 370), fails to state, explicitly or implicitly, that he (or his firm) was making a claim against SPS for services rendered on the

project, and thus fails to satisfy § 29.[16]  We think that the strict notice provision of § 29 was intended to relieve the general contractor of the need to engage in guesswork as to whether a claim was being made against it or the statutory bond.[17]  We do not believe that the Legislature "intended to have it held that such little expenditure of effort is too much diligence to require" of a claimant, sub-subcontractor or supplier, to preserve its rights against the general contractor's payment bond.  United States ex rel. J.A. Edwards &

---

[16] We note that N-Tek made a formal claim against First Sealord, Seaway's surety, by letter dated May 28, 2010, which, the judge found, "could not [have been] more explicit as to its purpose."

[17] In analogous cases, compliance by a claimant with the statutorily required notice has been held to be a condition precedent to the existence of a cause of action.  See, e.g., Webber Lumber & Supply Co. v. Erickson, 216 Mass. 81, 82-83 (1913) (mechanic's lien could not attach unless claimant gave written notice to owner of property to be affected by lien "of an intention to claim a lien"; notice in question "was fatally defective" and, thus, lien never attached [emphasis added]); Warren Bros. Co. v. Peerless Ins. Co., 8 Mass. App. Ct. 719, 723 (1979) ("function of the notice [in mechanic's lien situation] is to establish who are potential claimants[,]" which is "a subject in which the principal [the general contractor] and the surety [the bonding company] have a lively interest").  The same is true here.  Without the proper notice required by § 29, the general contractor, and its surety, may well not know who the sub-subcontractor is, in terms of its relationship with the project and other basic facts underlying the claim.

<u>Co</u>. v. <u>Thompson Constr. Corp</u>., 273 F.2d at 879 (quotation omitted).[18]

Section 29's written notice requirement constitutes a "condition precedent" under Massachusetts law -- i.e., an event that must occur before the principal or its surety is obligated to perform[19] -- that N-Tek had to meet to be able to enforce its statutory (§ 29) rights.[20]  See <u>International Bus. Machs. Corp</u>.

_____

[18] In <u>Warren Bros. Co</u>. v. <u>Peerless Ins. Co</u>., <u>supra</u>, the claimant (like N-Tek here) relied on the "line of decisions which stands for the principle that where 'the statutory purpose is remedial in nature, it should be broadly construed to effectuate its self-evident policies.'"  8 Mass. App. Ct. at 721-722, quoting from <u>M. Lasden, Inc</u>. v. <u>Decker Elec. Corp</u>., 372 Mass. 179, 183 (1977).  This court responded that, without sufficient written notice by the lien claimant, the general contractor and its surety "may well not know who the sub-subcontractors are and have no basis for holding back an appropriate retainage from the intervening subcontractor."  <u>Id</u>. at 723.  This court added that the claimant "overlooks this practical consideration when it argues that the filing of a lien bond makes compliance with G. L. c. 254, § 4, a useless formality, serving no purpose other than to clutter the registries of deeds."  <u>Ibid</u>.  "[N]o lien exists for a subcontractor unless the notice provisions of § 4 have been complied with."  <u>Ibid</u>.

[19] See <u>Massachusetts Mun. Wholesale Elec. Co</u>. v. <u>Danvers</u>, 411 Mass. 39, 45-46 (1991).  See also <u>Drake Fishing, Inc</u>. v. <u>Clarendon Am. Ins. Co</u>., 136 F.3d 851, 853 (1st Cir. 1998).

[20] Written notice has always been a part of the statutory bond regulatory scheme.  An early forerunner to § 29, G. L. c. 30, § 39 (since repealed), had required a creditor to file a sworn statement of claim with the Commonwealth's contracting officers within ninety days after the claimant ceased to perform labor or supply material.  See <u>Di Fruscio</u> v. <u>New Amsterdam Cas. Co</u>., 353 Mass. at 361.  In <u>Di Fruscio</u>, the Supreme Judicial Court held, "[t]here was no failure in the jurat adequately to identify the claim that was sworn to."  <u>Id</u>. at 362.  The notice

v. Quinn Bros. Elec. Co., 321 Mass. 16, 17 (1947); Armco Drainage & Metal Prods., Inc. v. Framingham, 332 Mass. 129, 132 (1954). If a creditor fails to meet a condition precedent to the principal's liability, the surety is not obligated to perform. Stearns, Law of Suretyship § 7.18, at 225. "It ill serves the statutory scheme, however, and would stimulate litigation, if we obscured the relatively simple statutory prerequisites upon which all parties in public contracting, including the sureties, presumably rely." Barboza v. Aetna Cas. & Sur. Co., 18 Mass. App. Ct. at 328.

Conclusion. A fair reading of § 29, in light of its history, the legislative aims advanced by the statute, settled contract and suretyship principles not displaced or altered by § 29, and governing Massachusetts case law -- bolstered by Federal court decisions interpreting the Miller Act's parallel text that is virtually identical to the provisions of § 29 in question here -- leads us to conclude that the judge was correct in ruling that N-Tek did not give SPS sufficient written notice of its bond claim to satisfy § 29.

Judgment affirmed.

---

named the alleged debtor, identified the contract, stated the account, had been "subscribed," and indicated that the "Balance due" was $21,718.02. Ibid. See Mosaic Tile Co. v. Rusco Prods. of Mass., Inc., 350 Mass. 432, 440 (1966) (plaintiff's fact-based allegations, set out in its complaint, "sufficiently assert[ed] compliance with" § 29). See also John W. Egan Co. v. Major Constr. Mgmt. Corp., 46 Mass. App. Ct. at 648.